**Leon SCHWAB, Plaintiff-Appellee,**

**v.**

**BULLOCK'S INC., a corporation, et al.,
Defendants-Appellants,**

**No. 72–2269.**

United States Court of Appeals,
Ninth Circuit.

Nov. 1, 1974.

Rehearing Denied Jan. 6, 1975.

John F. O'Hara of Parker, Milliken, Kohlmeier, Clark & O'Hara (argued), Los Angeles, Cal., Asa D. Sokolow (argued) of Rosenman, Colin, Kay, Petschek, Freund & Emil, New York City, for defendants-appellants.

Glenn Warner (argued) of Karpf, Leibow & Warner, Beverly Hills, Cal., for plaintiff-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and NEILL,* District Judge.

## OPINION

HUFSTEDLER, Circuit Judge:

B. B. S. K. Corporation ["BBSK"] appeals from an order denying its motion under Rule 60(b) of the Federal Rules of Civil Procedure to vacate a $540,000 default judgment. We reverse.

* Honorable Marshall Neill, Eastern District of Washington, sitting by designation.

Schwab filed an antitrust action against three cosmetics manufacturers and two retailers, charging them with conspiracy to refuse to sell the manufacturers' products to his drugstore, for which Schwab sought damages of $250,000, trebled. One of the defendants named was Germaine Monteil Cosmetiques Corporation, a Delaware corporation ["Germaine-Delaware"]. Germaine-Delaware's counsel advised Schwab that he had sued the wrong corporation. The named corporation two years earlier had acquired all the assets of and the name "Germaine" from Germaine Monteil Cosmetiques Corporation, a New York corporation ["Germaine-New York"], and the Delaware corporation had never participated in any of the activities alleged in the complaint.

Germaine-New York changed its name to BBSK after the sale of its assets and thereafter did not operate as a functioning business entity. BBSK was promptly placed in liquidation and finally dissolved in April, 1970, over a year before judgment by default was entered against it. It assets were distributed to its officers-stockholders, Guy and Germaine Bjorkman, Morton Kamerman, and David Starr. Germaine-Delaware's counsel informed Schwab's counsel, Harold Fendler, by letter of the correct business address of BBSK in New York and the correct addresses of its corporate officers.

On October 8, 1970, Schwab amended his complaint and for the first time named BBSK as a defendant. He dismissed Germaine-Delaware. Schwab made one attempt to serve the amended complaint personally on BBSK. His counsel, Fendler, acquired the services of a New York lawyer, Tifford, to accomplish service, and on October 3, 1970, Tifford went to BBSK's office in New York to effect service. He did not succeed, but he could not recall the reason for his failure. He could not remember whether the office door was locked or whether he entered the office and was told that he had the wrong office. The effort to serve the officers personally was equally fleeting.

On October 14, 1970, Fendler told Tifford to abandon further effort to locate or to serve BBSK or any of its officers personally, because Fendler had decided to serve the Secretary of State of New York. An associate of Fendler obtained an order from the district court on October 22, 1970, authorizing service on BBSK, a dissolved corporation, by serving the summons and amended complaint on the Secretary of State, pursuant to New York law (N.Y. Business Corp. Law, McKinney's Consol.Laws, c. 4, §§ 304(a), 306(b)). Service was made on the Secretary on October 28, 1970. The Secretary mailed the summons and amended complaint to the address listed for Germaine-New York. The mailing was returned to the Secretary undelivered because Germaine-New York had changed its address years before, and the building in which its former office was located had been demolished. No one followed up the abortive mailing. Actual service of the amended complaint was never made on BBSK or any of its officers.

In April, 1971, Schwab settled his case against all the defendants except BBSK for $20,000 total and dismissed them with prejudice, reserving his action against BBSK. On August 30, 1971, Schwab obtained a default judgment against BBSK for $540,000. No effort was exerted to notify Starr or any of the other officers of BBSK that a default judgment had been entered, until the first two weeks of January, 1972, when, without difficulty, Schwab served notice on each of BBSK's officers to take their depositions. The officers forthwith retained counsel and moved to vacate the default.

In support of the motion, each officer filed an affidavit denying knowledge of the pendency of the action and the entry of default until January, 1972, and each averred the existence of a meritorious defense and the lack of prejudice to Schwab if vacation were granted.

Schwab denied neither the existence of a meritorious defense nor lack of prejudice. The district court rejected the motion after hearing principally on the ground that BBSK secretary David Starr knew that the action was pending before default was entered, and his knowledge, imputable to BBSK and the other three officers, defeated BBSK's claim for relief under Rule 60(b).

■ In reviewing the district court's finding that Starr had actual knowledge that the action was pending, we must heed the important policy considerations governing disposition of a motion to vacate a default judgment. While a district judge has discretion to grant or deny a 60(b) motion to vacate a default judgment, that discretion is limited by three important considerations. First, Rule 60(b) is remedial in nature and therefore must be liberally applied (*e. g.,* Butner v. Neustadter (9th Cir. 1963) 324 F.2d 783, 786; 7 J. Moore, Fed. Prac., ¶ 60.10[7], [9]; ¶ 60.18[8]). Second, default judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits (*e. g.,* Patapoff v. Vollstedt's Inc. (9th Cir. 1959) 267 F.2d 863, 865; 6 J. Moore, Fed. Prac., ¶ 55.10[1]). Third, and as a consequence of the first two considerations, "[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits" (7 J. Moore, Fed. Prac., ¶ 60.19, at 232–33; Butner v. Neustadter, *supra,* 324 F.2d at 786). These considerations require that BBSK's motion to vacate the default judgment be granted.

In denying the motion to vacate the court below assumed for purposes of decision that BBSK had a meritorious defense to the underlying action. In addition, the record is devoid of any suggestion that Schwab would be prejudiced if the court granted the motion. The meritoriousness of the defense coupled with the lack of any significant prejudice to plaintiff should have led the district court to resolve in BBSK's favor any doubts in connection with the motion to vacate. This the district court failed to do.

■ The district court's finding that Starr knew about the pendency of the action against BBSK is not sustained by the record. Disregarding Starr's sworn denials of knowledge, the only evidence that bears on the question whether Starr knew the action was pending before service on the Secretary was Tifford's testimony that he talked by telephone to Starr on October 19, 1970, and told him that "Schwab had certain claims against certain people and thought that he, Mr. Starr, would be able to be of assistance." Much later, Tifford gave a different version of the conversation in which he said that he had told Starr that Schwab had a claim against BBSK and wanted information to use in litigation against it. Assuming that the district court credited the second version, that testimony does not support an inference that Tifford's statement conveyed to Starr that the litigation was Schwab's antitrust suit filed in California. Moreover, service of a subpoena on Starr in October, 1970, did not give him notice because that subpoena was issued in respect of the original complaint, which did not name BBSK as a party-defendant.

Evidence that Starr knew about the action after the Secretary was served is almost as thin. Schwab's counsel, Fendler, talked on the phone with Starr on November 4, 1970, but that conversation is a blank; we do not know what was said because Fendler died before he could testify at the hearing on the motion. The district court's disbelief of Starr's testimony does not become affirmative evidence that the substance of these conversations was that Schwab had filed an antitrust action against BBSK in October, 1970.

The state of the evidence convinces us that there is doubt that Starr and hence BBSK had knowledge of the pendency of

the action. If the "clearly erroneous" standard of review were appropriate here, perhaps, we could conclude that the court below properly resolved its doubt against Starr and BBSK. With respect to a motion to vacate a default judgment, however, the policy considerations require that a different rule apply, namely, any doubt must be resolved in favor of the motion to vacate.

In a technical sense, BBSK is responsible for the fact that it did not have actual notice of the litigation pending against it, because in 1954 BBSK's corporate predecessor failed to notify the Secretary of State about its change of address. But this negligence cannot be deemed "inexcusable" within the meaning of Rule 60(b). We cannot ignore the fact that Schwab and his counsel were informed of BBSK's correct address and the correct addresses of each of its four corporate officers. Nor can we ignore the fact that Schwab's counsel made only one attempt to serve the amended complaint on BBSK personally at its office and made no attempt to serve the amended complaint on any of the corporate officers personally at their addresses. Moreover, Schwab's counsel served papers other than the amended complaint on BBSK with no difficulty in October, 1970. Clearly the spirit of Rule 60 would not be served, and substantial justice would not be done, by pegging a $540,000 default judgment on a negligent act, occurring some sixteen years earlier, unconnected in any way with an attempt to evade judicial process.

On remand the district court should determine whether in light of the record as a whole the equities demand that BBSK bear all or a portion of Schwab's expenses in connection with the default judgment, the motion to vacate, and the attendant delay. Because default judgment is often a harsh response to what might have been a party's negligence, the court faced with a motion to vacate default is required to resolve doubt in the movant's favor. This requirement is not applicable, however, in the context of a motion for costs and attorneys' fees. In resolving the latter motion, where the results can be less harsh and more finely tailored to fit the negligence, if any, the district court may be justified in balancing the equities differently.

Reversed and remanded.