Harold AFFANATO, Plaintiff, Appellee,

v.

MERRILL BROTHERS and Cianbro Corporation, Defendants.

Appeal of CIANBRO CORPORATION.

No. 76–1296.

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1976.

Decided Jan. 11, 1977.

Robert B. Stimpson, Boston, Mass., with whom Jaffee & Stimpson, Boston, Mass., was on brief, for appellant.

Neil Sugarman, Boston, Mass., with whom Fink, Sugarman & Sugarman, Boston, Mass., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a judgment entered on May 24, 1976, awarding plaintiff damages in the amount of $142,500. These damages were assessed against defendant after a hearing which followed the district court's entry of a default on July 7, 1975.[1] The only issue before us on this appeal is the propriety of the court's defaulting defendant under the circumstances here presented.

The case began as an apparently routine tort action brought in federal court by reason of diversity. Its course, however, has not run smooth, as is indicated by the following "chronology of events" contained in the court's Memorandum and Order dated May 24, 1976:

"Counsel of record at the time of the default filed his appearance on April 26, 1973. Prior to this time, plaintiff had propounded interrogatories and had requested production of documents. [Defendant] Cianbro had asked for and received an extension of time to April 27, 1973, to provide the requested discovery. When new counsel appeared on April 26, the time for this discovery was extended until May 27. There followed six further motions to extend time, all of which were assented to by plaintiff. This discovery was still not forthcoming. In due course motions to compel were filed by plaintiff, and they were referred to Magistrate Davis. After defendant had failed to comply with his orders, the magistrate recommended that defendant be defaulted. The Court held a hearing on the magistrate's recommendations on May 1, 1975, at which sanctions were imposed. On the following day the answers to interrogatories were filed. On May 14, 1975, plaintiff filed a motion to compel discovery (further answers to interrogatories) which was allowed by the Court on May 29, giving defendant 20 days in which to

1. The district court summarized as follows the case's procedural history after the July 7, 1975, default:

"On Friday, August 15, [defendant] Cianbro filed a motion to remove default. When no one from defendant's counsel's office appeared at the August 18th hearing the Court denied the motion to remove default and proceeded to take evidence on the issue of damages. After a hearing on September 18, defendant's motion for reconsideration was denied."

respond. When this order was not complied with, plaintiff moved for default. When this motion was not opposed, the Court entered a default on July 7, 1975."[2] Having considered the entire record in this case and having weighed the facts enumerated above in the light of relevant legal principles, we have concluded that the district court did not abuse its discretion in this case and that its judgment must be affirmed.

■ It is true that "[a] default judgment is . . . a drastic sanction that should be employed only in an extreme situation." *Luis C. Forteza e Hijos, Inc. v. Mills,* 534 F.2d 415, 419 (1st Cir. 1976), citing *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). *See also SEC v. Research Automation Corp.,* 521 F.2d 585, 588 (2d Cir. 1975); C. Wright, Law of Federal Courts § 98 (3d ed. 1976). *Cf. Asociacion de Empleados v. Rodriguez Morales,* 538 F.2d 915, 917 (1st Cir. 1976). Default judgments are disfavored in the law. *Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir. 1974); *SEC v. Vogel,* 49 F.R.D. 297, 299 (S.D.N.Y.1969). The essential reason for the traditional reluctance of the courts to default a party is the "policy of the law favoring the disposition of cases on their merits." *Richman v. General Motors Corp.,* 437 F.2d 196, 199 (1st Cir. 1971) (citing cases).[3]

At the same time, however, in considering whether default is an appropriate sanction other factors must also be borne in mind, such as "the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved." *Von Poppenheim v. Portland Boxing & Wrestling Commission,* 442 F.2d 1047, 1054 (9th Cir. 1971), *cert. denied,* 404

U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972). *See also Luis C. Forteza e Hijos, Inc. v. Mills, supra* at 418.

■ When an appellate court reviews the trial court's imposition of sanctions of this nature, it must weigh the sanction in the light of the abuse of discretion standard. *Local Union No. 251 v. Town Line Sand & Gravel, Inc.,* 511 F.2d 1198, 1199 (1st Cir. 1975). *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2284 (1970). As the Supreme Court has very recently stated concerning the sanction of dismissal which is also authorized by Fed.R.Civ.P. 37(b)(2)(C):

"The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing. . . .

"There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the District Court.

"But here as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. . ."

2. Although the district court did not specifically refer to any of the federal rules, it is clear that this default would be authorized by Fed.R. Civ.P. 37(b)(2)(C) provided that it is otherwise permissible.

3. Moreover, "it must be remembered that there are constitutional limitations upon the power of courts, even in aid of their own valid processes,

to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." C. Wright, Law of the Federal Courts § 98 at 442 (3d ed. 1976) (footnote omitted). *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Brownell,* 357 U.S. 197, 210, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

*National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). We think that the policy considerations enunciated by the Supreme Court in *National Hockey League* are fully applicable to defaults under Rule 37(b)(2)(C).

In the present case, while we are well aware of "the severity of [default] as a sanction for failure to comply with a discovery order," *id.,* and while we are not without sympathy for those who will have to bear the cost of this judgment, we cannot say that the district court abused its discretion when it defaulted defendant.[4] *Cf. Roberson v. Christoferson,* 65 F.R.D. 615, 620–21 & n.2 (D.N.D.1975).

The facts in this case are somewhat unusual. The associate of the Massachusetts firm representing the defendant severed his connections therewith some time ago, and moved to Maine. The firm allowed him to continue to handle this, and some other cases. Having full confidence in his abilities, it did not check with him with respect to his conduct, and did not learn that over a substantial period of time he ignored repeated orders of the court with respect to answers to interrogatories and other discovery. Before us it is argued that the firm had every reason to trust the associate. This may well be, but we are not here concerned with an action for malpractice, or the assessment of fault as between one attorney and another. So far as the parties, and the court's action in imposing the default, are concerned, this issue is irrelevant. What is important is that the conduct of counsel with which defendant is chargeable consisted of a series of episodes of nonfeasance which amounted, in sum, to a near total dereliction of professional responsibility by the associate in the law firm defendant had retained. Granting that isolated oversights should not be penalized by a default judgment, the court was entitled to conclude that the conduct here went well beyond ordinary negligence, and that final default was appropriate. *Sivelle v. Maloof,* 373 F.2d 520, 521 (1st Cir. 1976). *Compare SEC v. Research Automation Corp., supra* at 588; *Flaks v. Koegel,* 504 F.2d 702, 708–09 (2d Cir. 1974).

*Affirmed.*

---

4. Defendant-appellant has also argued that the district court committed reversible error by entering the default in disregard of Rules 12(a)(2) and 12(d) of the Local Rules of the United States District Court for the District of Massachusetts. Rule 12(a)(2) reads in pertinent part:

"A party opposing a motion may file an opposition to the motion within 10 days after service of the motion, unless another period is fixed by rule or statute or by order of the court. . . ."

Rule 12(d) reads in pertinent part:

"Motions which are not set down for hearing as provided in section (e), will be decided on the papers submitted, after an opposition to the motion has been filed . . . or, if no opposition is filed, after the time for filing an opposition has elapsed."

On June 30, 1975, plaintiff-appellee served its motion to default on defendant-appellant, and on July 2 the motion was filed in court. The court allowed the motion on July 7, less than ten days after the date of service.

We need not determine, however, whether this apparent failure to heed the Local Rules would require us to vacate the default, because the court's action on July 7 may properly be viewed as something more than the mere allowance of a party's motion. As the court's Memorandum and Order (quoted *supra* ) makes clear, defendant had not, as of July 7, complied with the court's order of May 29 to file further answers to interrogatories within 20 days. This failure to comply with the court's order, when seen against the background of a record of non-cooperation in the discovery process, was sufficient to authorize the court to impose a sanction provided by Rule 37 quite apart from any motion by a party. We note also that defendant was accorded a hearing—albeit in the context of a motion for reconsideration—on the propriety of the default. *See* note 1, *supra.*