Laura WILSON, Plaintiff-Appellee,

v.

MOORE AND ASSOCIATES, INC., dba Uni-Check, fdba Telecheck Hawaii, a Hawaii Corporation, Defendant-Appellant.

No. 76–3166.

United States Court of Appeals, Ninth Circuit.

Nov. 11, 1977.

Rehearing and Rehearing En Banc Denied Dec. 23, 1977.

Peter G. Wheelon (argued), Honolulu, Hawaii, for defendant-appellant.

Richard S. Kanter (argued), John Harris Paer, on the brief, Honolulu, Hawaii, for plaintiff-appellee.

Before ELY, HUFSTEDLER, and WRIGHT, Circuit Judges.

ELY, Circuit Judge:

This appeal is from an Order of the District Court, denying a motion to set aside a default judgment. We affirm.

The plaintiff filed a complaint alleging a claim under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t. On the date of service of the complaint, Moore, the president of the defendant corporation, wrote the following letter to plaintiff's counsel:

"In answer to the above captioned summons and complaint issued by your office on behalf of a person who may be Laura Wilson, please be advised of the reasons why Ms. Wilson, if this is her true name, is denied personal check guarantees by Telecheck Hawaii.

"On January 12, 1972 a person identifying herself as Laura Wilson obtained a State of Hawaii Identification card using social security number 375–56–1641. On May 10, 1972 a person applied for and received another State I.D. card under the name of Patricia Ann Brewer, social security number 368–14–2114. Fingerprint comparisons show that both persons are one and the same.

"A person claiming to be a Laura Wilson appeared in my office last week, in the company of a young man who identified himself only as 'a friend.' I asked the person claiming to be Laura Wilson if she had ever acquired a State I.D. under the name of Patricia Ann Brewer. She refused to answer and the interview terminated soon thereafter.

"As a guarantor of personal checks, I must question anyone who assumes multiple identities. There is no violation of the Federal Fair Credit Reporting Act in classifying the actions of this person as suspect."

Moore sent a copy of this letter to the Clerk of the District Court of Hawaii.[1]

On the following day, plaintiff's counsel responded to Moore's letter, writing:

"Thank you for your letter of April 15, 1975. Let me suggest that you retain an attorney to represent your interests in this matter since Telecheck will be in default if it does not file a timely answer to the Complaint and Summons."

Within a week, Moore wrote this reply:

". . . I answered your summons and complaint in detail. . . .

"Just exactly what do you want for an answer? I have disclosed the file to you on a person who we are not sure of her correct identity and so must remain unnamed. What more is required by your office?"[2]

Plaintiff's counsel acknowledged receipt of Moore's second communication and reiterated her previous warning that an attorney

---

1. Obviously, this did not meet the formal appearance requirements specified by Rules 10 and 11, Fed.R.Civ.P.

2. There are obviously circumstances under which a District Court might properly decide that a layman was entitled to believe that such communications sufficed as a formal answer and appearance in the action. *See, e. g., Kinnear Corp. v. Crawford Door Sales Co.*, 49 F.R.D. 3, 5 (D.S.C.1970); *Dalminter, Inc. v. Jessie Edwards, Inc.*, 27 F.R.D. 491, 492 (S.D. Tex.1961). Here, however, the District Court decided that the defendant deserved no such indulgence, and, while we, of course, do not sit as fact-finders, we agree. It is apparent from both of Moore's letters that he is articulate and not unsophisticated in affairs of business. The fact that counsel was employed in connection with other litigation pending at about the same time (*see Telecheck Franchising, Inc. v. Moore & Associates, Inc.*, No. 75–0179 (D.Hawaii May 7, 1976)) suggests that Moore or another of the corporate managers was aware of orderly court procedures required in the event of the receipt of a summons and complaint.

be secured and a timely answer filed in order to avoid default.

■ Although the defendant had an attorney representing its interests in other litigation at about this time, the defendant failed to heed the advice of plaintiff's counsel, whereupon the plaintiff formally secured a default judgment. The day after receiving a summons of garnishment, the defendant, through counsel, moved to set aside the default judgment and to quash the summons. Fed.R.Civ.P. 60(b). At the hearing on the motion, the plaintiff did not resist by forecasting prejudice should the judgment be vacated, nor did the defendant plead mistake or excusable neglect. Rather, debate centered solely upon the alleged failure of the plaintiff to comply with the notice requirements of Fed.R.Civ.P. 55(b)(2), which, in pertinent part, provides:

"(b) JUDGMENT. Judgment by default may be entered as follows:

\* \* \* \* \* \*

(2) *By the Court.* . . . If the party against whom judgment by default is sought has *appeared* in the action, he . . . shall be served with written notice of the application of judgment at least 3 days prior to the hearing on such application. . . ." (emphasis supplied).

The District Court, unconvinced that the defendant deserved relief, denied the motion.

■ Here, our sole function is to determine whether the district judge abused his discretion in refusing to set aside the default judgment. We are mindful that the discretion of a District Court to deny a 60(b) motion to vacate is tempered by three significant considerations of policy:

"First, Rule 60(b) is remedial in nature and therefore must be liberally applied (*e. g., Butner v. Neustadter* (9th Cir. 1963) 324 F.2d 783, 786; 7 J. Moore, Fed.Prac., ¶ 60.10[7], [9]; ¶ 60.18[8]). Second, default judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits (*e. g., Patapoff v. Vollstedt's Inc.* (9th Cir. 1959) 267 F.2d 863, 865; 6 J. Moore, Fed.Prac.,

¶ 55.10[1]). Third, and as a consequence of the first two considerations, '[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits' (7 J. Moore, Fed.Prac., ¶ 60.19, at 232–33; *Butner v. Neustadter, supra,* 324 F.2d at 786)."

*Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir. 1974).

In *Schwab, supra,* we held that the relevant policy considerations should have induced the District Court to grant the motion to vacate. The court had assumed that the defendant had a meritorious defense. Furthermore, the plaintiff introduced no evidence that it would be prejudiced if the court granted the motion. Nevertheless, the court denied the motion based upon its finding that an officer of the corporate defendant knew about the pendency of the action. We reversed because the paucity of evidence raised considerable doubt in respect to such crucial knowledge.

As in *Schwab,* of course, the plaintiff here did not complain that granting the motion would be prejudicial; moreover, we assume *arguendo* that the defendant had a nonfrivolous defense as set forth in Moore's first letter. But there is no doubt whatsoever that the defendant had knowledge of the initiation of this litigation. Nor, as mentioned, did the defendant have any other acceptable justification, such as inadvertence, mistake or excusable neglect, for the failure to defend responsively and legally. Thus, for the moment ignoring the impact of Moore's two letters, it would appear that the trial court acted well within its discretion in refusing to set aside the default judgment.

Moore's informal communications to plaintiff's counsel did not improve the defendant's posture such that the District Court was compelled to reach a contrary result.

No party in default is entitled to 55(b)(2) notice unless he has "appeared" in the ac-

tion. The appearance need not necessarily be a formal one, *i. e.*, one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit. *E. g., H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 139 U.S.App.D.C. 256, 432 F.2d 689 (1970). *See generally* 6 *J. Moore, Federal Practice* ¶ 55.05[3] 1976; 10 *C. Wright & A. Miller, Federal Practice and Procedure* § 2686 (1973); *Annot.*, 27 A.L.R. Fed. 620 (1976).

■ The failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so. 6 *J. Moore, supra* ; 10 *C. Wright & A. Miller, supra*, § 2687. Although written notice is contemplated, it need not necessarily be in any particular form. "The major consideration is that the party is made aware that a default judgment may be entered against him." 10 *C. Wright & A. Miller, supra*, § 2687 (Supp.1977).

In *Livermore, supra*, the benchmark case in respect to Rule 55(b)(2), the parties, following service of the complaint, engaged in written and oral settlement discussions for seventy-five days before the plaintiff, without indicating any previous intent to do so, filed a motion for default judgment. The court observed that the defendant's attempts to achieve a settlement demonstrated a clear purpose to defend the suit and that there were no indications that it would

not have proceeded diligently to file an answer upon notice that compromise negotiations, suggested initially by the plaintiff itself, had failed. Accordingly, the court reversed the District Court's denial of the motion to vacate the default judgment. *See also Kinnear Corp. v. Crawford Door Sales Co.*, 49 F.R.D. 3 (D.S.C.1970); *Dalminter, Inc. v. Jessie Edwards, Inc.*, 27 F.R.D. 491 (S.D.Tex.1961). *Compare Port-Wide Container Co. v. Interstate Maintenance Corp.*, 440 F.2d 1195 (3d Cir. 1971), wherein the court upheld a denial of a motion to vacate upon facts resembling those in *Livermore* except that the plaintiff warned the defendant to file an answer by a specified date or else suffer a default.

■ The appellant argues that the *Livermore* decision indicates that reversal is appropriate here. We do not agree. Moore's first letter is partially responsive to the allegations set forth in the complaint, but the absence of any course of settlement negotiations and, of more significance, plaintiff counsel's two-barreled warning to the defendant to secure counsel and to file an answer in the action in order to avoid a default markedly and fully distinguish *Livermore* from the facts *sub judice*.[3] We are unwilling to hold that Moore's "informal contacts" constituted the equivalent of a formal court appearance requiring strict 55(b)(2) notice in circumstances such as these, where the plaintiff's "informal contacts" provided actual, unqualified notice that delay in answering the complaint would result in default.[4]

---

**3.** Nor does the decision in *Magette v. Daily Post*, 535 F.2d 856 (3d Cir. 1976), recently brought to our attention by the appellant, strengthen its appeal. There, the defendant formally appeared in the action by filing an answer.

**4.** The adversary process was disrupted because the appellant, in the face of explicit warnings to file an answer, refused to be responsive, as orderly judicial procedures should, and do, require. "In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Livermore, supra*, 139 U.S.App. D.C. at 258, 432 F.2d at 691.

The impact of a contrary result on the discretion of district court judges is apparent. Courts would be compelled to vacate default judgments whenever a defendant communicates with the plaintiff—even by telephone— following receipt of the complaint regardless of the plaintiff's response thereto. Quite apparently, this would tend to subvert the orderly administration of justice. While we have "outgrown the primitive stage of formalism," reasonable formalistic requirements are an essential ingredient of efficient court management and operation.

■ Accordingly, we are left only to review a discretionary act of the District Court. There is every indication that the court considered the matter carefully[5] and conscientiously. No manifest abuse of discretion having been demonstrated, the judgment is

AFFIRMED.[6]

EUGENE A. WRIGHT, Circuit Judge, dissenting:

With respect, I dissent. I conclude reluctantly that there was an abuse of the district court's discretion.

I would hold that sending a copy of the reply letter to the court clerk was a "presentation or submission to the court" sufficient to constitute an appearance for purposes of F.R.Civ.P. 55. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2686 (1973). Furthermore, it is undenied that Moore also telephoned the court clerk and was told that no action on the complaint was pending before the court and that he would be notified of any change. These actions clearly displayed Moore's intention to defend and should have triggered Rule 55(b)(2)'s three-day notice requirement. Annot., 27 A.L.R.Fed. 620, 624–25 (1976).[1] *See, e. g., H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 139 U.S.App.D.C. 256, 432 F.2d 689 (1976).

I do not share the majority's fear that reversal here would compel district courts to vacate default judgments whenever a defendant communicates with the plaintiff after service of the complaint. The facts of this case show more than a minimal response. The letter-answer that defendant sent to the plaintiff's attorney—and filed with the clerk—shows that he was determined to defend, and that he was indeed showing due regard for the judicial process.

Rule 55(b)(2) was promulgated to protect "parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit." *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, supra*, 139 U.S.App.D.C. at 258, 432 F.2d at 691.

*Port-Wide Container Co. v. Interstate Maintenance Corp.*, 440 F.2d 1195 (3d Cir. 1971), upon which the majority relies, is a case in which the court found that the defendant had not appeared. The parties had negotiated extensively, and the defendant failed to file an answer in the face of plaintiff's definite warning that, if an answer were not filed before a given date, he would seek a default judgment. In this case the defendant communicated with the court and plaintiff gave only a vague, infor-

---

**5.** We note that the plaintiff originally secured a default judgment in the amount of $5250 plus approximately $579 for attorney's fees and costs. The District Court subsequently vacated this judgment *sua sponte* because the damages were not liquidated. The court then conducted a hearing directed to the amount of the plaintiff's damages, without notice thereof to the defendant, however, and entered a new judgment in the reduced amount of $750 general and punitive damages, plus approximately $739 for attorney's fees and costs. The record reveals that the court was aware of Moore's first letter, and had read the letter, at the time the damages were finally measured and fixed. Moreover, the appellee's attorney had submitted copies of the correspondence between her and Moore to the District Court. This correspondence, except for Moore's first letter, which the District Court had already seen, was

included as a part of an affidavit submitted in support of the appellee's motion for a default judgment.

**6.** Our dissenting Brother Wright comments that the plaintiff's attorney took "advantage of a layman opponent whom she knew had a meritorious defense." The record does not support the observation that either plaintiff or her counsel had taken advantage of anyone, and the existence of a "meritorious defense" is speculative.

**1.** While Moore's actions may not have been legally sufficient to constitute a formal Answer, they did not evidence a disregard for the judicial process that would justify refusal to vacate the default judgment. *See, e. g., Kinnear Corp. v. Crawford Door Sales Co.*, 49 F.R.D. 3 (D.S.C. 1970). 6 Moore's Federal Practice ¶ 55.05[3] (1976).

mal warning that defendant might, at some unspecified time, be "in default." [2]

Because I think that Moore initially appeared, "informal contacts" with the plaintiff could not dissipate his right to notice of application for default judgment. "A party's failure to appear or be represented at any stage of the proceedings *following an initial appearance* does not affect [Rule 55(b)(2)'s] notice requirement." 10 C. Wright & A. Miller, Federal Practice and Procedure, *supra*, § 2687 (emphasis added).

The majority does not hold that the defendant was given such notice here. The absence of such notice is a serious procedural defect that generally justifies reversing a trial court's failure to set aside a default judgment. 6 Moore's Federal Practice ¶ 55.05[3] (1976).

The district court's refusal to vacate the default judgment is even more disturbing in light of relevant policy considerations. Rule 60(b)'s remedial character, our traditional preference for hearing a case on the merits, and the fact that the defendant has a seemingly meritorious defense all require that we carefully scrutinize a trial court's discretionary refusal to vacate a default judgment. *Schwab v. Bullock's Inc.*, 508 F.2d 353 (9th Cir. 1974).

Furthermore, the plaintiff does not contend that setting aside the judgment would result in prejudice to her case. "[A] default judgment is . . . a drastic sanction that should be employed only in an extreme situation." *Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir. 1977), *quoting Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415 (1st Cir. 1976).

Finally, I am disturbed by the conduct of plaintiff-appellee's attorney from the Legal Aid Society of Hawaii. The Society, partially funded with public moneys, has a responsibility to represent the public interest in the broad sense, as well as to adhere to the ethical standards of the Hawaii bar. I consider it improper for counsel to take advantage of a layman opponent whom she knew had a meritorious defense.

While an attorney has a duty to his client, he also has duties to the profession, to society, and to the administration of justice. Often these duties conflict. *See* Aronson, "Professional Responsibility: Education and Enforcement," 51 Wash.L.Rev. 273, 287 (1976). *See also* Preamble and Preliminary Statement to ABA Code at 1; Canons 4, 5, 6 & 7 (duty to client); 1, 2, 8 (duty to profession); 3, 9 (duty to public).

In this case all of these duties could have been fulfilled by informing the district court of all relevant circumstances, notifying defendant of application for a default judgment and, in general, pursuing the goal of a full hearing on the merits.

Review of a trial court's discretionary acts is narrow. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). But I believe an injustice has been done here. Policy considerations should be applied and any doubt should be resolved against entry of the default judgment.

I would remand with directions to vacate the default.

---

**2.** An alternative reading of *Port-Wide* would be to say that because the plaintiff gave proper notice the court did not reach the appearance issue. The differences in the notice given in *Port-Wide* and in the case at bar, discussed above, render the case equally unpersuasive under this interpretation, as well.