Wally McMANUS; and Wally's Fence & Iron, Inc., Plaintiffs,

v.

AMERICAN STATES INSURANCE CO., Defendant.

No. SA CV 00–712 DOC(ANX).

United States District Court, C.D. California.

Oct. 11, 2000.

Daniel J. Callahan, Jim P. Mahacek, Callahan & Blaine, Santa Ana, CA, for plaintiffs.

Raymond H. Goettsch, Scott K. Murch, LaTorraca & Goettsch, Long Beach, CA, for defendant.

### *ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT*

CARTER, District Judge.

Defendant American States Insurance Co. moves the Court to set aside the default entered against it on August 21, 2000 for failure to plead responsively within 20 days. Plaintiffs Wally McManus and Wally's Fence & Iron, Inc. oppose the Motion. The Court deems this matter appropriate for decision

without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7.11. Accordingly, the hearing set for October 16, 2000 at 8:30 a.m. is hereby removed from the Court's calendar. After consideration of the moving, opposing, and replying papers, the Court DENIES the Motion.

## I.

## BACKGROUND

Defendant American States Insurance Co. ("ASI") issued an insurance policy to Plaintiffs Wally McManus and Wally's Fence & Iron, Inc. The policy provided that ASI would defend Plaintiffs in any suits arising out of covered occurrences. In the fall of 1999, William J. Cavanaugh, an individual, sued McManus in the Superior Court of California for the County of Los Angeles in a case styled William J. Cavanaugh v. Walter McManus, No. VC030261 ("the Cavanaugh suit"). The complaint in the Cavanaugh suit, served on McManus on October 13, 1999, alleged breach of a partnership agreement between McManus and Cavanaugh and sought contribution and an accounting. It also alleged conversion of partnership property and assets, including advertising materials, and interference with prospective business advantage and contractual relations. The complaint was later amended to name Wally's Fence & Iron as an additional defendant.[1]

On January 25, 2000, McManus and Wally's Fence & Iron, Inc. (hereinafter collectively referred to as "McManus") tendered defense of the Cavanaugh suit to ASI. Tender was made via a letter from counsel for McManus to ASI. On February 3, 2000, James E. Boles, a claims adjuster for ASI, wrote back, stating:

> I have reviewed the complaint and determined that it will be necessary to conduct a coverage investigation. There are questions as to when was the the [sic] occurrence, what exact damages are being alleged, and other issues that must be resolved prior to us confirming coverage.

> With the information presented we are unable to confirm our [sic] deny coverage or defense in this matter at this time.

Compl., Ex. D.

On February 14, 2000, McManus's counsel responded to this letter by sending ASI a letter and also some documents in McManus's possession that McManus felt related to the Cavanaugh suit. Principally, the letter put forth McManus's position that the Cavanaugh complaint itself made clear that the suit was covered by the policy and that McManus did not have much additional information or details about Cavanaugh's claims. The letter stated that McManus was willing to respond to any specific questions from ASI, but was unwilling to make a recorded statement as requested by ASI. Five weeks later, on March 22, 2000, Boles responded to this letter on behalf of ASI, stating:

> We have received your latest packet of information and continue to review it as it pertains to our coverage investigation. We are preparing a final determination on our coverage position and will notify you in the near future of our position.

Compl., Ex. F.

On March 23, 2000, McManus's counsel again wrote to ASI. The letter asked when ASI would have a final position regarding coverage and pointed out that over 30 days had passed since ASI first responded to McManus's tender of the Cavanaugh suit. The letter asked ASI to commence defense of McManus, either with or without a reservation of rights, and pointed out that the delay was causing prejudice to McManus. The letter also tendered defense of a cross-complaint in the Cavanaugh suit. After receiving no response from ASI to its March 23, 2000 letter, on April 24, 2000 McManus's counsel once again wrote to ASI. In part, this letter stated:

> It has now been some three months since the original tender [of the Cavanaugh suit] was made and I can discern no articulable [sic] reason why American States has not accepted its contractual responsibilities

---

1. Apparently it is disputed whether this amendment refers to Wally's Fence & Iron, Inc. or another, previously existing entity.

by now. The insured has provided all of the documentation in its possession and further offered to answer any written questions concerning the underlying events....

Please advise of American States [sic] position within ten days of the date of this letter. Should American States refuse to accept the Defendant's tender within said time frame, your insured will assume that American States has wrongfully denied coverage and your insured retains its rights to file all appropriate legal proceedings as necessary against American States including, but not limited to, an action for breach of the covenant of good faith and fair dealing....

Both American States' insured and this office, would hate to see our relationship deteriorate. On the other hand, American States has now had three months in which to make a fairly simple decision. We can discern no reason for American States' protracted delay.

Compl., Ex. H. ASI responded to this letter with a phone call the next day. Boles called McManus's counsel and informed him that ASI would immediately assume defense of McManus in the Cavanaugh action and the cross-complaint under a reservation of rights. Boles said that ASI would issue a letter to this effect and appoint its own panel counsel within a week. However, ASI did not issue a letter and did not appoint counsel.

On May 11, 2000, McManus's counsel wrote to ASI again. The letter pointed out that three weeks had passed since the April 25 phone call but no letter had been issued and no counsel had been appointed. The letter conveyed McManus's growing frustration with ASI's lack of response, stating in part:

I do not have a letter confirming or denying coverage. I do not have a reservation of rights letter. I do not have a letter from American States' panel counsel asking to "associate in" on this case. I have nothing.

What American States will have is a bad faith lawsuit, sitting in its hands, if American States does not acknowledge its duty

of defense and make immediate arrangements towards retiring its insured's outstanding attorneys' fees within one week.

Compl., Ex. I. ASI still did not issue a letter confirming coverage, pay any of the attorneys' fees that had been incurred thus far, or appoint counsel.

On July 24, 2000, ten months after the onset of the Cavanaugh suit and six months after tendering defense of the suit to ASI, McManus sued ASI in this Court for breach of contract and breach of the implied covenant of good faith and fair dealing. The Complaint also seeks declaratory relief. Jurisdiction is premised on diversity of citizenship, as both Plaintiffs are California citizens and ASI is an Indiana corporation with its principal place of business in Seattle, Washington and Plaintiffs allege that the amount in controversy exceeds $75,000. On July 25, 2000, McManus served the summons and Complaint on Steve Small, a regional claims analyst for Safeco Insurance Company of America, which provides services including claims analysis and adjustment to ASI. Small had previously been employed by ASI for nine years. According to McManus, Small is listed with the California Secretary of State as an agent for service of process on ASI. Small has submitted a declaration in which he does not dispute that he accepted service. McManus's counsel then went on vacation until August 11, 2000.

According to the Summons and Federal Rule of Civil Procedure 12(a), ASI had 20 days in which to file a responsive pleading to the Complaint. This period ended on August 14, 2000. ASI did not file a pleading by August 14, 2000, nor it did obtain an extension of time in which to plead responsively. Instead, the following series of events occurred. After accepting service on July 25, 2000, Small reviewed the Complaint and determined that it related to the Cavanaugh suit. Small then determined that the Cavanaugh suit was being handled by Safeco employees Dennis Mann, a senior claims representative, and Donna Frole, a commercial casualty manager.[2] Small works in a Foun-

2. According to the declarations submitted with this Motion, Boles, who had been working under

a supervisor named Betty Panther, accepted a new position on June 12, 2000 and began work-

tain Valley, California office, but Mann and Frole work out of a Ventura, California office. The next day, July 26, 2000, Small contacted Frole and asked her to ask Mann to contact McManus's counsel "to inform him that American States had already decided to accept the tender of defense and a reservation of rights letter would be forthcoming and to determine whether the bad faith lawsuit would be dismissed since American States had accepted the tender of defense for the underlying lawsuit." Small Decl. ¶ 6. Small did not send a copy of the Summons and Complaint to Frole, Mann, or the Ventura office, nor did he explicitly tell them that it was a federal case. However, Small did give the Summons and Complaint to Brian Anderson, a commercial casualty manager in Small's own Fountain Valley office, for "further handling." *Id.* ¶ 7. He did this on July 25, 2000, the day he received service. Small told Anderson that he had directed that Mann contact McManus's counsel and tell him that ASI had accepted defense of the case and ask whether McManus would dismiss the bad faith case. This was the end of Small's involvement in the handling of the Complaint. Small went on vacation from August 7 to August 11, 2000.

After receiving the phone call from Small on July 25, 2000, Frole "indicated" to Mann that McManus had filed a bad faith suit. Mann Decl. ¶ 3. Neither Frole nor Mann did anything more about the case until August 7, 2000. On that day, Frole talked to Mann and told him to contact McManus's counsel and tell him that the letter confirming defense with a reservation of rights was still forthcoming and ask if he would be dismissing the bad faith suit. Three days later, on August 10, 2000, sixteen days after ASI was served with the bad faith suit, Mann placed a call to McManus's counsel. This was the first time anyone from ASI had responded to McManus since receiving service of the bad faith suit. The receptionist told Mann that McManus's counsel was on vacation and would be back in on August 14, 2000.[3] Mann left a voice mail message. In this message,

he stated that he was the adjuster assigned to the Cavanaugh suit, left his number, and asked for McManus's counsel to return his call. He did not say that ASI would defend the Cavanaugh suit. In addition, he did not ask for an extension of time in which to plead responsively in the bad faith suit, he did not say who was handling the bad faith suit, and in fact he said nothing at all about the bad faith suit.

Sometime soon after August 11, 2000, McManus's counsel returned from vacation and listened to Mann's message. He did not return the call. August 14, 2000, the last day on which ASI could plead responsively, came and went. On August 16, 2000, Mann called McManus's counsel again. Mann notes that he called McManus's counsel at 9:30 a.m. After the receptionist said that McManus's counsel was not available, Mann left another message. McManus's counsel returned the call around 10:00 a.m. According to McManus's counsel, by this time he had already prepared and submitted to the Court for filing a request for entry of ASI's default. *See* Mahacek Decl. ¶¶ 16, 17, 18. It is not clear what he means by "submitted" to the Court; the request was lodged with the Court at 2:31 p.m. the next day, August 17, 2000. McManus's counsel and Mann have different recollections of their August 16, 2000 phone conversation. McManus's counsel states that the following occurred:

> [Mann] stated that he was aware of the bad faith lawsuit but ... had nothing to do with it because [it] was being handled by a different claims representative. Mr. Mann told me he did not even know who the other representative was. Mr. Mann asked me some questions about the *Cavanaugh* lawsuit, and its status, and asked me to provide him certain documentation. Specifically, he wanted a copy of an exhibit that had been attached to the original *Cavanaugh* lawsuit. Even though I had previously provided a copy of that exhibit to American States, I agreed to, and did, provide Mr. Mann with an additional copy.

---

ing in the new position on July 21, 2000. Apparently the Cavanaugh suit was assigned to Mann and Frole after this time. It is unclear whether Boles's transfer was communicated to McManus.

**3.** McManus's counsel states that he was on vacation until August 11, 2000. That day was a Friday. August 14, 2000 was the following Monday.

Mr. Mann specifically did *not* state that American States had made the decision to defend McManus in the Cavanaugh action. He only told me that he was now the claims representative assigned to the file and he was reviewing the file. Mr. Mann did *not* ask for, and I did *not* agree, to withdraw this lawsuit and I was neither asked to, nor did I agree, to set aside the request for entry of default submitted to the Court earlier that day.

Mahacek Decl. ¶ 17. Mann remembers the conversation quite differently. He states:

I told [McManus's counsel] that I had not seen the complaint in the bad faith lawsuit, but that American States had already decided to defend his clients and a reservation of rights letter had not yet been sent. I asked what his intentions were regarding the bad faith lawsuit since American States would be defending his clients in the underlying lawsuit. [McManus's counsel] replied that he may or may not make a proposal regarding the settlement of the bad faith lawsuit, but that he was unwilling to dismiss the bad faith lawsuit at that time.

Mann Decl. ¶ 6. Mann also states that McManus's counsel informed him that ASI was in default in the bad faith lawsuit which was pending in federal court.

ASI's behavior abruptly changed after learning that it was in default. After talking to McManus's counsel on August 16, 2000, Mann told Frole that McManus's counsel had told him that ASI was in default. Frole and Mann then contacted Anderson back at the Fountain Valley office, who had done nothing with the case since receiving the documents from Small on the day they were served, July 25, 2000. Anderson states that because Small told him that Small had told Frole to tell Mann to tell McManus's counsel that ASI would defend and to inquire whether McManus would dismiss the bad faith suit, Anderson "did not plan to take any action with respect to the bad faith lawsuit until [he] was contacted by the adjuster [Mann] or supervisor [Frole] from the Ventura office." Anderson Decl. ¶ 3. Anderson states that prior to hearing from Frole and Mann on August 16, 2000, he "had thought that American

States' answer in the bad faith lawsuit was due 30 days after service." *Id.* ¶ 5. After hearing that ASI was in default, Anderson retained outside counsel, Raymond H. Goettsch, at around 4:00 p.m. on August 16, 2000. Goettsch then called McManus's counsel. The receptionist said that he had left for the day, so Goettsch left a message identifying himself and asking for an extension of time in which to file a responsive pleading. Goettsch also faxed a letter to McManus's counsel making the same request. McManus's counsel says that he did not receive the voice mail message, but he did receive the fax, presumably in the morning of August 17, 2000.

Having not heard back from McManus's counsel, Goettsch called him again "mid-morning" on August 17. Goettsch Decl. ¶ 5. McManus's counsel said that he had already requested an entry of default. Goettsch and McManus's counsel then discussed stipulating to setting aside the entry of default or otherwise settling some or all of the case, but no agreement was reached. Goettsch then prepared an Answer and filed it with the Court the same day, August 17. The Clerk file-stamped it at 3:53 p.m. on August 17, 2000. Thus, the Answer was filed approximately one and a half hours after McManus's request for entry of default was lodged with the Court at 2:31 p.m. The Clerk entered ASI's default on the same day, August 17. Noting that the request for entry of default had come prior to the filing of the answer, on August 21, 2000 the Court struck ASI's Answer from the record. No default judgment has yet been entered.

On August 25, 2000, over a week after finding out that it was in default, Mann sent McManus a letter confirming that ASI would defend McManus in the Cavanaugh suit under a reservation of rights. This letter is the letter that had been "forthcoming" throughout the four months that had passed since Boles had told McManus's counsel that ASI would defend. August 25, 2000 was eight months after McManus tendered defense of the suit to ASI and eleven months after the onset of the suit. ASI now moves the Court to set aside the entry of default.

## II.

## DISCUSSION

ASI makes two main arguments in support of its Motion. First, it argues that there is good cause to set aside the default because Anderson's beliefs—that a responsive pleading was due in 30 days rather than 20 and that McManus would probably dismiss the suit after hearing from Mann—were reasonable. It also asserts that setting aside the default does not prejudice McManus and that ASI has a meritorious defense. Second, ASI argues that entry of default was improper because the entry was made after its Answer was filed. The Court will address this second argument first.

### A. Who Reached the Courthouse First

 ASI asserts that its Answer was filed before the request for entry of default. ASI cites *Hudson v. State of North Carolina,* 158 F.R.D. 78, 80 (E.D.N.C.1994), for the proposition that default should not be entered when a party has responded in some way, even if the party's response is late. First, the Court notes that in *Hudson,* the court reached this conclusion on the facts before it but also stated the more general rule for determining whether good cause exists to set aside default, as discussed below. *See Hudson,* 158 F.R.D. at 80. Thus, the rule is not as hard and fast as ASI would like.

Second, the Court does not agree with ASI's version of the facts. ASI bases its assertion on the order in which the documents appear on the Court's docket sheet. Both ASI's Answer and McManus's request for entry of default are listed as being filed on August 17, 2000, but the Answer is listed first. However, the times stamped on the documents in the Court's physical file, not the order in which they appear on the docket, indicate when the documents were received by the Court. According to these stamped times, McManus's request for entry

of default reached the courthouse before ASI's Answer.[4] The request for entry of default was lodged at 2:31 p.m. on August 17, 2000. An hour and a half later on the same day, at 3:53 p.m., ASI's Answer was filed. Neither was input into the Court's computerized docketing system that day. When the Clerk's office receives a request for entry of default, it lodges the request. The Clerk then researches the case to verify that indeed no responsive pleading has been filed or other appearance made. In this case, the Clerk performed this research on August 17, 2000 and, on the same day, filed the lodged request for entry of default and entered the default. No time is indicated for when this action was taken. Thus, it is possible that the Clerk completed this work prior to 3:53 p.m., when the Answer was filed. It is also possible that the Clerk completed this work just after ASI's Answer was filed. The exact chain of events cannot be determined. However, this is not a situation where the plaintiff is at the courthouse waiting for the exact minute when the answer is late to seek default. ASI's answer was due on August 14. It did not even realize it was in default until August 16, when McManus's counsel pointed it out. The Court will go by the times stamped on the initial documents indicating when the parties brought them to the courthouse and will deem the default to have been entered at 2:31 p.m., when the request for entry of default was received and lodged by the Clerk. The times stamped on the request for entry of default and the Answer show indisputably that McManus's request for entry of default reached the courthouse before ASI's Answer. Thus, entry of default was not improper on the grounds that a responsive pleading had been made.

### B. Good Cause

#### 1. Legal Standard

 Entry of default may be set aside "for good cause shown." Fed.R.Civ.P. 55(c).

---

4. McManus's counsel's repeated assertions in his declaration that the request for entry of default was "submitted" to the Court before 10:00 a.m. on August 16, 2000, prior to his phone call with Mann, appear somewhat disingenuous, as the request was lodged and stamped by the Court at

2:31 p.m. on August 17, 2000. However, any failings in McManus's recollection of when the request was filed are immaterial, as what matters is the date and time shown on the documents in the Court's file.

When a default judgment would be set aside, a mere entry of default should also be set aside. Thus, any default, whether entry or judgment, can be set aside when the party in default establishes "mistake, inadvertence, surprise or excusable neglect." *See* Fed. R.Civ.P. 60(b). In the Ninth Circuit, this standard is not met, and a motion to set aside default can be denied, when: "(1) the plaintiff would be prejudiced if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default." *In re Hammer*, 940 F.2d 524, 525–26 (9th Cir.1991). Only one of these factors need be present to justify denial of a motion to set aside a default judgment. *See id.* at 526. In a case in which it found excusable neglect, the Ninth Circuit stated that "where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any should be resolved in favor of the motion to set aside the judgment." *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir.1974). The "good cause" standard for setting aside an entry of default alone, not a default judgment, is slightly more favorable to the party in default. *See Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986) ("[T]he standards for setting aside entry of default under Rule 55(c) are less rigorous that those for setting aside a default [judgment]."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2696, at 142 (3d ed.1998) ("[A] default entry may be set aside for reasons that would not be enough to open a default judgment."). Nonetheless, "the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b)." *Hawaii Carpenters' Trust Funds*, 794 F.2d at 513. These grounds should be "liberally interpreted when used on a motion for relief from an entry of default." *Id.*

Although decisions on setting aside both entries of default and default judgments are entrusted to the district court's discretion, *see Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 146 (9th Cir.1975), the "court's discretion is especially broad" when considering whether to set aside an entry of default, rather than a default judgment, *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir.1986).

### 2. Application

#### a. Excusable Neglect

ASI's failure to file an answer on time is not excusable in this case. Its neglect of its obligations was not reasonable or excusable, and its own culpable conduct led to the default. None of its proffered explanations is persuasive. ASI asserts that Anderson's "mistaken impression" and "erroneous belief" that a responsive pleading was due within 30 days, not 20, "is entirely understandable because the time to respond to complaints in California state court is 30 days." Mot. to Set Aside Entry of Default at 9:12, 14–16. If this indeed was Anderson's belief, he must not have read the Summons, as it states prominently, "YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney [name and address listed] An answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint." *See* Summons. In fact, this text is the entire text of the Summons, except for the caption, name of McManus's attorney, date, and signature of the Clerk. Failing to read the Summons is not an excusable mistake. In addition, it strains credulity too far to assert that commercial casualty managers for ASI are not familiar with the rules of practice in the federal courts. ASI is a sophisticated, repeat litigant with much experience in the federal courts. A simple Westlaw search conducted by the Court revealed that, since 1944, ASI has been a party to over 100 federal cases that resulted in published opinions. The Court requires compliance with its rules even from those who are appearing in federal court for the first time; it certainly will require compliance from those who have purposefully availed themselves of the federal forum in the past.

Anderson's other erroneous belief, that he should do nothing about the Com-

plaint because McManus would surely dismiss the case after hearing from Mann that ASI would defend the Cavanaugh suit, is also not reasonable. Although perhaps in some circumstances it is reasonable for a defendant to assume that recent actions on its part moot the case and that the plaintiff will soon dismiss the case, here, there was no change in ASI's behavior prior to the filing of McManus's Complaint or immediately after receiving service of it. The Complaint was filed precisely because ASI repeatedly told McManus first, that it needed to investigate, and second, that it would defend but a letter so indicating was "forthcoming." Small, Frole, and Mann all planned to tell McManus that the letter was "forthcoming" and therefore ask if he would dismiss. That was exactly the line McManus had been hearing from ASI for months already, a fact explicitly and clearly indicated in the Complaint. ASI's failure to do anything other than repeat that the letter would be forthcoming, when it bothered to respond at all, was the precise reason that McManus filed this suit. That McManus would have immediately dismissed the suit after getting a phone call from Mann saying exactly what he had already heard on several occasions, that ASI would defend but the letter was forthcoming, is highly unlikely, and it is unreasonable for anyone at ASI to have made this assumption. The situation would be different if ASI had in fact issued the letter, appointed counsel, and begun defending the Cavanaugh suit after receiving service of McManus's bad faith suit. However, it did not do any of those things. The letter agreeing to defend was not issued until over a week after Mann talked to McManus's counsel and found out that ASI was already two days late with its answer and also over a week after default was entered.

ASI's assertion that Frole and Mann's blind assumption that the case was filed in state court is some form of excusable mistake or inadvertence is similarly unpersuasive. For default to be set aside because counsel has been confused or mistaken as to when a responsive pleading is due, the mistake must be reasonable, or at least understandable. Assuming that a suit was filed in state court is not a reasonable or understandable mistake. All of the ASI/Safeco employees who handled this case have significant experience in such matters. Small has been a regional claims analyst for two years and an employee of ASI for nine years before that. Frole has been a commercial casualty manager for ten years and a Safeco employee for 22 years altogether. Mann has been a senior claims representative for one and a half years. An entity that appears in both federal and state court as often as does ASI can surely be expected to know that some cases can be brought in either system, that there are differences between the systems, and that those differences matter.

Having considered and rejected all of the explanations put forth by ASI, the Court concludes that its failure to plead responsively on time was not due to excusable neglect but instead was due to its own culpable conduct. *Cf. Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir.1987) (upholding district court's determination that defendants who did not answer acted culpably because they understood United States law even though they had been advised not to answer by a member of their state department and stating that "[a] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer").

### b. Other Factors

■ In *Schwab,* the Ninth Circuit stated that doubts should be resolved in favor of setting aside a default judgment when the party in default has acted quickly and has a meritorious defense. *See Schwab,* 508 F.2d at 355. Here, ASI acted quickly after learning that it was in default and, at this early stage of the litigation, McManus would not suffer severe prejudice if the default were set aside. As ASI has agreed to defend the underlying action, the only difference between the parties on the merits of McManus's duty of defense claim is whether ASI may defend with a reservation of rights. Notably, in the briefs filed regarding this Motion ASI asserts no defense at all to Mc-

Manus's claim that it has a duty of defense.[5] Regarding bad faith, ASI does not dispute McManus's factual allegations about the long delay in responding to McManus's tender and the numerous occasions on which it said only that defense would be "forthcoming." In fact, ASI's own expert states that the delay "is not easily explainable." Hamilton Decl. ¶ 7. However, ASI asserts that it has a defense to McManus's bad faith claims in that, according to ASI, its actions were not intentional.[6]

Nonetheless, this case differs from *Schwab* because in that case, the court also found that the failure to respond on time was due to excusable neglect. *See id.* at 356 (noting that although service had technically been accomplished upon defunct defendant corporation through service on the secretary of state, the actual defendants in fact did not have actual notice of the suit and the plaintiffs had not been particularly diligent in seeking to give them notice); *see also Savarese*, 513 F.2d at 147 n. 19 (upholding denial of motion to set aside default and noting that "[t]he existence of inexcusable neglect in this case makes it unlike [*Schwab*]"). In cases decided after *Schwab*, the Ninth Circuit reaffirmed that *Schwab's* rule does not mean that default should be set aside when the default results from culpable conduct rather than excusable neglect. *See Meadows*, 817 F.2d at 521 ("If a default judgment is entered as the result of a defendant's culpable conduct, however, we need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the judgment were set aside."); *In re Hammer*, 940 F.2d at 526

("[T]he trial court's denial of a motion to vacate a default judgment will be affirmed if the defendant's own culpable conduct prompted the default."). The Court is unaware of any Ninth Circuit precedent squarely addressing whether a different rule should be applied for motions to set aside entry of default, rather than default judgments.[7] Because a district court has more, not less, discretion when considering a motion to set aside entry of default alone, the Court will apply the same rule.

Because ASI's failure to answer on time was due to its own culpable conduct, this case is quite similar to *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366 (9th Cir.1977), another case decided several years after *Schwab*. In this case, the Ninth Circuit upheld denial of a motion to set aside a default judgment. The court stated:

> As in Schwab, of course, the plaintiff here did not complain that granting the motion would be prejudicial; moreover, we assume arguendo that the defendant had a nonfrivolous defense .... But there is no doubt whatsoever that the defendant had knowledge of the initiation of this litigation. Nor, as mentioned, did the defendant have any other acceptable justification, such as inadvertence, mistake or excusable neglect, for the failure to defend responsively and legally.

*Wilson*, 564 F.2d at 368. In *Wilson*, the court reached this result even though the defendant wrote to the plaintiff about the suit twice after receiving service. The court noted that:

**5.** Because ASI's Answer was stricken from the record, the Court did not consider it in ruling on this Motion. For the same reason, the Court also did not consider the "Analysis ' of American States' Proposed Answer in Opposition to Motion to Set Aside Entry of Default" submitted by McManus with its Opposition, and it also did not consider ASI's "Response to Plaintiffs' 'Analysis' of Complaint."

**6.** While drawing no conclusions as to whether this defense would succeed at trial, the Court notes that an insured is damaged by an insurer's failure to respond and delay in responding, even if the insurer later defends, because the insured has to arrange and pay for its own defense during that time.

**7.** In one case, the Ninth Circuit upheld a district court's finding of good cause to set aside an entry of default even though it found the evidence of excusable neglect "less than compelling" when the district court had also found no prejudice and the presence of a meritorious defense. *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 946 (9th Cir.1986). However, in reaching this conclusion the court did not set forth a specific rule for motions to set aside entries of default, instead it just emphasized the broad scope of a district court's discretion when determining good cause for such a motion. *See id.* at 945–46.

There are obviously circumstances under which a District Court might properly decide that a layman was entitled to believe that such communications sufficed as a formal answer and appearance in the action.... Here ... the defendant deserved no such indulgence .... he is articulate and not unsophisticated in affairs of business. The fact that counsel was employed in connection with other litigation pending at about the same time ... suggests that [the defendant] was aware of orderly court procedures required in the event of the receipt of a summons and complaint.

*Id.* at 367 n. 2. Similarly here, ASI does not deserve the indulgence that its voice mail message to McManus's counsel, in which only the Cavanaugh suit, not this one, was mentioned, was a sufficient method of responding to the suit within the required period. ASI is "articulate and not unsophisticated in affairs of business," and it is certainly "aware of [the] orderly court procedures required in the event of the receipt of a summons and complaint." *Id.*

The cases cited by ASI can all be distinguished on the grounds that in them, the courts held the parties' neglect to be excusable. The Court concludes that ASI's failure to respond within the required period was not excusable or reasonable in any way. Therefore, there is no good cause to set aside the entry of default.

## III.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Set Aside Entry of Default.

IT IS SO ORDERED.