**OLYMPIC CORPORATION, Plaintiff,**

v.

**SOCIETE GENERALE, A/S Havkong and Meyer Line, Defendants.**

**SOCIETE GENERALE, Defendant and Third-Party Plaintiff,**

v.

**MANUFACTURE de PRODUITS CHIMIQUES PROTEX, Third-Party Defendant.**

**Civ. 3662.**

United States District Court, S. D. New York.

Oct. 6, 1971.

Bigham, Englar, Jones & Houston, New York City, for plaintiff Olympic Corporation; Joseph J. Magrath, 3rd, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendant and third-party plaintiff, Societe Generale; Thomas P. Griesa, Guy Miller Struve, New York City, of counsel.

Kramer, Marx, Greenlee & Backus, New York City, for third-party defendant, Manufacture de Produits Chimiques Protex; Norwood P. Beveridge, Jr., John M. Kriz, New York City, of counsel.

BONSAL, District Judge.

In this diversity action, the third-party defendant Manufacture de Produits Chimiques Protex ("Protex") moves to dismiss the third-party complaint of Societe Generale ("Societe"), defendant and third-party plaintiff; and Societe, in the event Protex's motion is granted, moves to dismiss the complaint as against it.

In November 1969, the third-party defendant Protex, a French corporation having an office in Paris and its plant at Chateau Renault, France, purchased 20,000 pounds of resorcinol from plaintiff Olympic Corporation ("Olympic"), a Massachusetts corporation having its principal place of business in Cambridge, Massachusetts, for $14,016., giving Olympic a letter of credit issued by defendant Societe, a French banking corporation with its principal place of business in Paris and having an office in New York. The letter of credit was issued through the First National Bank of Boston, as Societe's correspondent. The purchase order and the letter of credit expressly specified that the resorcinol would be shipped "F.A.S. New York", and it was shipped on board the M/S HAVSKAR, a Norwegian vessel owned by defendant Meyer Line, on or about January 16, 1970.

On January 27, 1970, the day the resorcinol arrived in Antwerp, Belgium, Olympic presented the shipping docu-

ments and a draft against the letter of credit to the First National Bank of Boston, which refused to pay the draft because the documents had been presented late and were stale. With Olympic's agreement, the First National Bank of Boston sent the documents to Societe to obtain Protex's decision whether to pay the draft. On January 30, 1970, Societe received the documents in Paris and requested Protex's instructions.

Also on January 30, Protex obtained possession of the resorcinol from Meyer Line in Antwerp under a letter of guarantee issued by its Antwerp transfer agent, and used the resorcinol at its plant in Chateau Renault, France, during the first days of February 1970.

Protex did not respond to Societe's request of January 30, and Societe repeated the request on February 6, 1970, Protex again failing to respond. On February 13, 1970, Societe made a third request for instructions and sent Protex the documents on approval, which Olympic asserts violated its instructions to Societe. Finally, on February 18, 1970, Protex authorized payment of the draft.

Meanwhile, on February 13, 1970, Olympic demanded the return of the resorcinol and cabled Societe to return the documents; and on February 18, Olympic allegedly resold the resorcinol in the United States for $111,000. Since Protex had already used the resorcinol, Societe was unable to comply with Olympic's demand, and this action followed in which Olympic seeks to recover the full $111,000.

From the foregoing, it will be noted that neither the main action nor the third-party action has any *contacts* with New York other than the fact that the resorcinol was shipped F.A.S. New York and that Societe had an office in New York, which, however, did not participate in any way in the transaction. The alleged conversion of the resorcinol by Societe or Protex, or both, took place in Belgium or in France, and if Societe violated the plaintiff's instructions with respect to the documents, it did so in France.

Finally, the liability, if any, of the A/S HAVKONG and Meyer Line arose from their acts in Antwerp, Belgium in releasing the resorcinol to Protex. The issue raised by Protex's motion and Societe's motion is whether the court in its discretion should decline to exercise jurisdiction under the doctrine of *forum non conveniens* for the reason that jurisdiction properly belongs in the courts of a foreign country. Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir.), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); De Sairigne v. Gould, 83 F.Supp. 270 (S.D.N.Y.), aff'd, 177 F.2d 515 (2d Cir. 1949), cert. denied, 399 U.S. 912, 70 S.Ct. 571, 94 L. Ed. 1338 (1950). No issue has been raised that these actions could have been instituted in the French courts. Indeed, on these facts, a trial in France would appear to be easier, more expeditious and less expensive than one in this court. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

The third-party action between Societe and Protex involves, exclusively, matters of French law between two parties both of whom are French companies. Indeed, it is urged that Article 15 of the French Civil Code requires that it be determined by the courts of that country. As noted above, all of the events on which liability is based occurred in or close to France, and a judgment rendered against Protex by this court may not be recognized by the courts of France where it would have to be enforced. Thus, these factors lead the court to refrain from exercising its jurisdiction over the third-party claim. Transomnia G.m.b.H. v. M/S Toryu, 311 F.Supp. 751 (S.D.N.Y.1970); Fitzgerald v. Westland Marine Corporation, 369 F. 2d 499 (2d Cir. 1966); Scognamiglio v. Home Lines, Inc., 246 F.Supp. 605 (S. D.N.Y.1965).

Moreover, the grounds of hardship and inconvenience asserted by Protex apply with as much force to the main action

against Societe whose acts took place in France and whose witnesses reside in France. Though these facts are not decisive by themselves to dismiss the case on the grounds of *forum non conveniens*, especially where an American plaintiff is involved as in this case and where Plaintiff has alleged a need to use nonparty witnesses resident in the United States, Ciprari v. Servicos Aereos Cruzerio do Sul, SA, 232 F.Supp. 433 (S.D.N.Y.1964); Shulman v. Compagnie Generale Transatlantique, 152 F.Supp. 833 (S.D.N.Y.1957), this case has additional factors which demonstrate that Societe might suffer injustice if forced to defend without Protex. Latimer v. S/A Industrias Reunidas F. Matarazzo, 91 F.Supp. 469, 472 (S.D.N.Y.1950); Wheeler v. Societe Nationale Des Chemins De Fer Francais, 108 F.Supp. 652, 653 (S.D.N.Y.1952). One factor is the hardship and inconvenience of multiple litigation with the possibility of inconsistent results due to the indemnification claim against Protex by Societe. Though Olympic claims that its dispute with Societe is independent of Societe's claim against Protex, for purposes of payment, Societe was acting as Protex's agent and thus, may have a right of indemnification for wrongful acts of the principal which harm the agent. In addition, the damage to Olympic was partially due to its own negligence in its delay in presenting the bills to First National Bank of Boston and in selling before ascertaining whether it could get back the goods. Thus, while plaintiff's choice of forum should not be disturbed unless the balance is strongly in favor of the defendant, Gulf Oil v. Gilbert, *supra,* it is clear on the facts in this case that the balance is strongly in favor of Societe and Protex.

Conditioned on Societe and Protex stipulating that they will submit to the jurisdiction of the French courts and waive the running of any French prescription or statute of limitations, the motions of the third-party defendant Protex to dismiss the third-party complaint and the motion of Societe to dismiss the complaint on the ground of *forum non conveniens* will be granted; no costs.

Settle judgment on notice.