**WALKER & ZANGER (WEST COAST) LTD., Plaintiff,**

v.

**STONE DESIGN S.A., Defendant.**

No. CV 95–2775 RAP (JGX).

United States District Court,
C.D. California.

May 1, 1997.

Linda Wight Mazur, Turner Gerstenfeld Wilk Aubert & Young, Beverly Hills, CA, Robin M. Turner, Turner, Gerstenfeld Wilk & Tigerman, Beverly Hills, CA, for Plaintiff.

Steven H. Haney, Andrews & Kurth, Los Angeles, CA, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR RELIEF FROM VOID JUDGMENT

PAEZ, District Judge.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This breach of contract action arose from plaintiff Walker & Zanger (West Coast) Ltd.'s ("Walker Zanger") purchase of limestone products from defendant Stone Design S.A., a French corporation. From 1988 to 1994, plaintiff bought limestone products from defendant on numerous occasions. In 1995, plaintiff brought this action to recoup losses for ten shipments of allegedly unmerchantable limestone for which Stone Design did not accept plaintiff's debit memo. Plaintiff alleged causes of action for (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness; and (5) money had and received. Plaintiff alleged total damages in the amount of $131,556.13, comprised of net general damages in the amount of $33,977.03 and lost profits in the amount of $97,579.10. Plaintiff further requested an award of costs incurred in the amount of $3,293.63.

Defendants were served with the complaint on or about June 23, 1995, and the proof of service was filed with the Court on August 2, 1995. Stone Design failed to appear in the action, and the clerk of the Court entered default on August 8, 1995. On November 30, 1995, plaintiff filed an application for default judgment. The Court granted plaintiff's application, and a default judgment was entered. On January 22, 1997, the Court granted plaintiff's request to appoint a private process-server to serve the writ of execution on defendant.

According to defendant, plaintiff attempted to satisfy a portion of its judgment with the assistance of another corporation, Sherman–Loehr Custom Tile Works ("Custom Title"). According to defendant, Custom Tile ordered approximately $75,000 worth of limestone from Stone Design and then refused to pay, stating that it had an assignment from Walker Zanger for a portion of the judgment.

Pending before the Court is Stone Design's Motion for Relief from Void Judgment pursuant to Fed.R.Civ.P. 60(b). Stone Design contends the judgment is void for lack of subject-matter jurisdiction because (1) pursuant to the parties' arbitration agreement the dispute had to be arbitrated in France; (2)

France's Civil Code gives French courts exclusive jurisdiction over this action because the defendant is a French national; and (3) the Court lacked personal jurisdiction over Stone Design. Defendant argues that because the judgment is void, the Court must vacate the partial execution of the judgment.

Upon consideration of the parties' moving, opposition and reply papers, defendant's motion for relief from void judgment is denied.

## II.

### *DISCUSSION*

#### A. Legal Standard

■ As a general rule a judgment is "void" if the party against whom default was entered was never properly served or received no actual notice of the action before the answer was due; if the court lacked jurisdiction over the parties; or if the court lacked subject-matter jurisdiction. *See* Schwarzer, Tashima & Wagstaffe, CAL.PRAC. GUIDE: FED.CIV.PRO. BEFORE TRIAL § 6:178–6:182 (The Rutter Guide 1997) (hereinafter Schwarzer).

■ Federal Rule of Civil Procedure 60(b)(4) provides, in pertinent part:

[o]n motion and upon such terms as are just, the court may relieve a party or a or a party's legal representative from a final judgment, order, or proceeding for the following reasons ... (4) the judgment is void[.]

Fed.R.Civ.P. 60(b). Certain procedural or jurisdictional defects in obtaining a default judgment render the judgment "void" within the meaning of Fed.R.Civ.P. 60(b)(4). Unlike other bases for relief under Fed.R.Civ.P. 60, no time limit exists to bring a motion to vacate a judgment as void. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FEDERAL RULES OF CIVIL PROCEDURE § 2862 (West 1995, 1996). Moreover, although Fed.R.Civ.P. 60(b)(4) appears to require a motion

to vacate for lack of jurisdiction to be made within a "reasonable time," court have consistently held that there is no time limit for such a motion. *See e.g. United States v. Williams*, 109 F.Supp. 456 (D.C.Ark.1952) (finding that a delay of twenty-two years after entry of judgment did not preclude motion to vacate as void under Fed.R.Civ.P. 60(b)(4)). Courts do not have discretion to decline to vacate a void judgment.

■ Relief is not available under Fed. R.Civ.P. 60(b) merely because the disposition was erroneous. *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C.Cir.1987) Instead, "it must be determined that the rendering court was powerless to enter it." *Id.* For example, where the court lacked personal jurisdiction over the defendant or the requirements for effective services were not satisfied, the default judgment is void and must be vacated. *Id.*

#### B. Service

■ Judgment entered subsequent to defective service of the summons and complaint is void. Schwarzer, § 6:181. Once the validity of service of process is contested, the plaintiff bears the burden of establishing its validity. *See Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir.1992). Here, there is no dispute regarding the validity of service of the summons and complaint.[1]

■ Under Fed.R.Civ.P. 55(b)(2), plaintiff need only serve the defendant with notice of the application for default if the defendant has appeared in the action. Schwarzer, § 6:89. "Normally, an appearance in an action involves some presentation or submission to the court. [ ] But because judgments by default are disfavored, a court usually will try to find that there has been an appearance by defendant." *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 689 (9th Cir.1988) (internal quotation marks and citations omitted) Thus, a defendant who has not formally appeared, for ex-

---

1. A court can not exercise jurisdiction over a defendant until the defendant has been served properly. Proper service ensures that a party receives adequate notice of the litigation and receives due process in the opportunity to be heard. *See Jackson v. Hayakawa*, 682 F.2d 1344,

1347 (9th Cir.1982). A defendant may waive defects in the service of process. Schwarzer, § 6:182.1 (citing *Jackson v. Heiser*, 111 F.2d 310 (9th Cir.1940); *Trustees for Central Laborers Welfare Fund v. Lowery*, 924 F.2d 731, 733 (7th Cir.1991)).

ample by filing a responsive pleading, may be deemed to have appeared for purposes of Fed.R.Civ.P. 55 if the defendant clearly manifested an intention to defend the action. *Id.,* § 6:89.1 (citing *Wilson v. Moore & Assoc., Inc.,* 564 F.2d 366, 369 (9th Cir.1977) ("In limited situation, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit."); *see also United States v. McCoy,* 954 F.2d 1000, 1003 (5th Cir.1992)).·

In *Wilson,* the Ninth Circuit found defendant had not "appeared" for purposes of triggering the notice requirement of Rule 55 when defendant sent plaintiff a letter that was partially responsive to the complaint and provided the court with a copy of the letter. Schwarzer, § 6:89.16 (citing *Wilson,* 564 F.2d at 369). There, defendant ignored warnings from plaintiff's counsel that default would be taken, and defendant never formally appeared or participated in settlement negotiations. *Id.* Similarly, in *Direct Mail Specialists,* the court found defendant had not appeared where defendant's president merely called plaintiff to complain about having been served and said he would refer the matter to his attorney. *Id.,* 840 F.2d at 689.

▬ Thus, where informal contacts rise to the level of settlement negotiations or. are sufficient to establish that the defendant expressed an intent to defend the lawsuit, notice of the application for default should be required. Here, however, defendant did no more than write to plaintiff, without notifying the Court, to assert its position that this Court lacked jurisdiction to hear the action.[2] In sum, Stone Design never appeared before the Court or expressed its intention to defend the lawsuit. Accordingly, defendant was not entitled to notice of the default application.

## C. Arbitration Agreement Does Not Make Judgment Void

Stone Design argues that the judgment is void because the sales contracts included an arbitration provision. That provision states:

ARBITRATION: All disputes arising in connection with the present Conditions of Sale will be finally settled under the rules of arbitration of the Court of Commerce of Paris FRANCE.

At the heart of Stone Design's position is the presumption that the arbitration agreement divests the Court of jurisdiction. As plaintiff points out, international arbitration clauses are governed by the United Nations Convention on the Recognition and Enforcement of Arbitral Awards (the "Convention"), codified at 9 U.S.C. § 201, to which both France and the United States are signatories. The Federal Arbitration Act is based in part on the Convention, and § 203 provides that district courts shall have original jurisdiction over actions arising under the Convention.

Article II of the Convention states:

1. Each Contracting State shall recognize an agreement in writing under which parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

9 U.S.C. § 201.

▬ Commercial legal relationships governed by the Convention include "a con-

---

**2.** Defendant contends that Stone Design's letter asserted that the dispute must be arbitrated in France. Walker Zanger protests this characterization, arguing that the letter makes no mention of arbitration. Neither party provides the Court with an authenticated English translation of the letter. Nonetheless, even if Stone Design did assert to Walker Zanger that it was entitled to arbitrate the dispute in France, Stone Design did not present that argument to the Court.

tract evidencing a transaction involving commerce." *Prograph International, Inc. v. Barhydt,* 928 F.Supp. 983, 988 (N.D.Cal.1996) (quoting 9 U.S.C. § 2). "Section 2 applies to all contracts that Congress could regulate under the full sweep of its Commerce Clause powers." *Id.* (citing *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 839–40, 130 L.Ed.2d 753 (1995)). Consequently, the contracts at issue here fall within the purview of the Convention.

Article II, § 3 of the Convention "imposes a mandatory duty on the courts of a Contracting State to recognize and enforce an agreement to arbitrate...." *Id.* (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 959 (10th Cir.1992)). When a party asks the Court to enforce an agreement under the Convention, "the Court performs a 'very limited inquiry' to decide the following four questions"[ ]:

(1) Is there an agreement in writing to arbitrate the subject of the dispute?

(2) Does the agreement provide for arbitration in the territory of the signatory of the Convention?

(3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial?

(4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

*Id.* If the Court answers these questions in the affirmative, it is required to order arbitration unless the agreement is void, inoperative or incapable of being performed. *Id.*[3]

Here, all four requirements are clearly satisfied. The contracts provide for arbitration; the arbitration clause is intended to require arbitration in France (plaintiff's protestations to the contrary seem hollow at best); the agreement arises out of commercial transactions between the parties; and Stone Design is not a citizen of the United States. Thus, were the Court faced with a motion to compel arbitration under the Con-

vention, the Court would be required to grant it. However, this case is currently before the Court in a radically different posture.

Defendant correctly points out that the Supreme Court has articulated a policy favoring international arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commerce system for predictability in the resolution of disputes require that we enforce the parties' agreement [for foreign arbitration], even assuming that a contrary result would be forthcoming in a domestic context").

> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical advantages.... [It would] damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen [and women] to enter into international commercial agreements.

*Id.* 473 U.S. at 631. More recently, the Supreme Court, construing the Carriage of Goods by Sea Act ("COGSA"), stated:

> If the United States is to be able to gain the benefits of international accords and have a role as a trusted partner in multilateral endeavors, its courts should be most cautious before interpreting its domestic legislation in such manner as to violate international agreements. That concern counsels against construing COGSA to nullify foreign arbitration clauses because of inconvenience to the plaintiff or insular distrust of the ability of foreign arbitrators to apply the law.

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 115 S.Ct. 2322, 2329, 132 L.Ed.2d 462 (1995).

Nonetheless, the Ninth Circuit has made it clear that the policy of the Federal

---

**3.** Such language is to be interpreted narrowly, encompassing only those circumstances that can be neutrally applied on an international scale, such as fraud, mistake, duress and waiver. *Id.*

Arbitration Act "does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that arbitration proceed in the manner provided for in the parties' agreement." *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1413 (9th Cir.1990); *see also Arbitration Between Standard Tallow Corp. and Kil–Management,* 901 F.Supp. 147, 151 (S.D.N.Y.1995) (holding parties agreement to arbitrate in London valid, but refusing to provide relief where respondents had not filed petition to compel arbitration). Likewise, nothing in the Convention suggests the Court is required or empowered to sua sponte enforce an arbitration agreement. Rather, the language of the Convention requires a court to refer the parties to arbitration "at the request of one of the parties." Defendants provide no authority to suggest that a request brought well over a year after default was entered requires the Court to reopen the matter under Rule 60(b) and refer the parties to arbitration. Consequently, defendant's argument that the Court lacked subject-matter jurisdiction because the parties were required to resolve the dispute pursuant to the terms of the arbitration clause fails.

Embedded in defendant's argument concerning the arbitration provision is an argument that plaintiff committed fraud upon the Court. This argument fails because regardless of whether plaintiff provided the Court with copies of the sales contracts that included the arbitration provision, the outcome would have been the same.

### D. French Courts Do Not Have Exclusive Jurisdiction

 With respect to its arbitration argument, defendant concedes that this Court is bound by the Convention. Section 203 of the Convention provides that an action falling under the Convention shall be deemed to arise under the laws and treaties of the United States, such that the district courts shall have original jurisdiction regardless of the amount in controversy. 9 U.S.C. § 203. Moreover, diversity jurisdiction was available pursuant to 42 U.S.C. § 1332(a)(2) because the action was one between a citizen of a state and a citizen of a foreign state. Consequently, under the laws of the United States, which this Court is bound to follow, the Court had subject-matter jurisdiction over plaintiff's action. Thus, even if defendant were correct that the French Code provides for exclusive jurisdiction over all actions against French nationals, the laws of the United States govern this Court's jurisdiction, and the Court could not conclude it lacked jurisdiction.

In addition, defendant provides no support for its position that Article 15 of the French Civil Code establishes exclusive jurisdiction over actions brought against French nationals. As plaintiff points out, even defendant's own expert merely states that Article 15 provides French courts with jurisdiction to hear any case in which a French national is a defendant. She says nothing whatsoever about exclusive jurisdiction.

Defendant cites *Olympic Corp. v. Societe Generale, et al.,* 333 F.Supp. 121 (S.D.N.Y. 1971) for the proposition that Article 15 provides exclusive jurisdiction. It is true that that court noted, and apparently approved, the argument that Article 15 might require a third-party action between two French nationals to be determined in the French courts. *Id.* at 123. However, the court also focused on the fact that because the events had occurred in or close to France, a judgment might not be recognized in France, and on the fact that neither the third-party plaintiff nor the third-party defendant had any connection to New York that would make it a convenient forum. *Id.* The court therefore granted the motion to dismiss the third-party complaint on grounds of forum non conveniens. *Id.* at 124.

The district court in *Olympic* also granted a motion to dismiss the initial complaint in that action, which was brought by a Massachusetts corporation against a French national. *Id.* Notably, that portion of the district court's decision was reversed on appeal, and the Second Circuit made no mention of Article 15 of the French Civil Code. The Circuit held the district court erred in dismissing the plaintiff's complaint against a French corporation with a branch office in New York. *Olympic Corp. v. Societe Generale,* 462 F.2d

376, 378 (2d Cir.1972). Thus, the circuit court decision in *Olympic* undermines Stone Design's argument, and the district court decision is of no assistance to Stone Design because Walker Zanger is not a French national, and the procedural posture of that case was substantially different than that presented here.

This Court did not lack subject-matter jurisdiction over this action at the time the default was entered, and the judgment is not void.

### E. The Court Properly Asserted Personal Jurisdiction

■ If the Court lacked personal jurisdiction over Stone Design, the default judgment is void. It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

■ The starting point for "analysis of personal jurisdiction issues in federal cases is the 'long-arm' statute in effect in the state in which the court is located." *Schwarzer*, § 3:34 (citing *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir.1974)); Fed.R.Civ.P. 4(k)(1)(A). California's long-arm statute extends jurisdiction to the very limits of constitutional due process. Cal. Code of Civ.Proc. § 410.10. Consequently, the Court need only determine whether the exercise of jurisdiction in this case comports with due process. *See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986).

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional conceptions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Where a defendant deliberately engages in significant activities within a state, purposely availing itself of the privilege of conducting business there, it is presumptively reasonable to require that defendant "submit to the burdens of litigation in that forum as well." *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In such instances, "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Applying the "minimum contacts" analysis, a court may obtain either general or specific jurisdiction over a defendant. If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is subject to suit even on matters unrelated to his or her contacts to the forum. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952). A court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court. The question is "whether the cause of action arises out of or has a substantial connection with that activity." *Hanson v. Denckla*, 357 U.S. 235, 250–253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The Ninth Circuit has established a three-part test to evaluate the nature and quality of a defendant's contacts so as to determine the availability of specific jurisdiction:

(1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Gordy v. Daily News, L.P.*, 95 F.3d 829, 831–32 (9th Cir.1996). Incorporating the standards set forth in *Burger King*, the Ninth Circuit has expounded upon the requirements for purposeful availment, noting that purposeful direction of some act having effect in the forum constitutes sufficient contact to

exert jurisdiction, and that a lesser showing of contacts with the forum may be sufficient if considerations of reasonableness so require. *Haisten,* 784 F.2d at 1397.

### 1. *Purposeful Availment*

Purposeful availment, which satisfies the first part of the Ninth Circuit test, requires a finding that the defendant "[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990) (quoting *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988)). However, " 'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts' to support personal jurisdiction." *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 816 n. 9 (9th Cir.1988) (quoting *Burger King,* 471 U.S. at 478).

In *Burger King,* the Supreme Court observed:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." [ ] It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Burger King,* 471 U.S. at 478–79 (citations omitted). The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person." *Id.*

 Stone Design contends the purposeful availment prong of the test is not satisfied because the limestone sales agreements· all contained an arbitration clause requiring arbitration in France rather than litigation in the United States. This argument fails to address the core of the test, which asks whether the defendant purposefully performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. Stone Design performed such affirmative conduct by shipping limestone to plaintiff in California and accepting payment over the course of their eight-year relationship. Although. the contracts included the arbitration provision, nothing would have prevented Stone Design from waiving that provision and litigating in California. Moreover, by doing· business with a corporation operating in California, Stone Design necessarily availed itself of the protection of California's laws regardless of whether it engaged in litigation in California. Consequently, the purposeful availment prong is satisfied.

### 2. *Relation Between the Claim and Defendants' Contacts*

To determine whether a claim arises out of forum-related activities, and satisfy the second part of .the Ninth Circuit test, courts apply a "but for" test. *Ballard,* 65 F.3d at 1500. Here, the Court must decide whether the plaintiff's claims would have arisen but for the defendants' contacts with California. *See id.* It is clear that but for the contractual negotiations and performance between plaintiff and defendant plaintiff would have had no action against defendant. Accordingly, this prong of the test is satisfied.

### 3. *Reasonableness of Exercise of Jurisdiction*

The existence of minimum contacts is not sufficient to allow a court to exercise personal jurisdiction over a defendant. The third step of the Ninth Circuit test requires a finding that assertion of jurisdiction is reasonable. In other words, once the court concludes that a defendant purposefully established minimum contacts with a forum state, and that the claims at issue arise from those contacts, the court must determine whether the assertion of personal jurisdiction would comport with traditional notions of "fair play and substantial justice." *International Shoe,* 326 U.S. at 326.

In general, it is only unfair to impose jurisdiction in those rare situations in which

the plaintiff and the state's interests in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum. *Burger King,* 471 U.S. at 476–77.[4] Court "presume that an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard,* 65 F.3d at 1500. To avoid jurisdiction, the burden is on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

Here, defendant has not met its burden of presenting other considerations that would make it unreasonable for the Court to assert jurisdiction. Plaintiff has demonstrated that defendant had significant contacts with California from which plaintiff's claims arose. Defendants have not asserted any hardship beyond the expense of participating in litigation in a foreign country. As the Supreme Court stated in *Burger King,* "because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King,* 471 U.S. at 474 (internal quotation marks omitted).

Because Stone Design is a foreign national, the reasonableness standard is somewhat more stringent. In *Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a plurality of the Supreme Court held that it was unreasonable to assert jurisdiction over a foreign defendant "considering the international context, the heavy burden on the alien defendant and the slight interests of the plaintiff and the forum state...." *Id.* The Court explained that "[t]he 'unique burdens' placed upon a foreign national defending itself locally 'should have significant weight' in assessing the 'reasonableness' of a local court's exercise of personal jurisdiction." *Id.*

Nonetheless, in light of defendant's substantial contacts with California by its sale of limestone to Walker Zanger here, even the unique burden on Stone Design of defending in the United States is not sufficient to make the Court's exercise of jurisdiction unreasonable. Consequently, the Court properly asserted personal jurisdiction over Stone Design, and the default judgment is not void.

### III.

### CONCLUSION

For the foregoing reasons, defendant's motion for relief from void judgment is denied. Accordingly, the Court need not reach defendant's argument that the Court must provide defendant relief from plaintiff's partial execution of the purportedly void judgment.

**IT IS SO ORDERED**

---

4. Factors to balance in determining reasonableness of exercising jurisdiction include: "The extent of defendant's 'purposeful' interjection;" "The burden on defendant in defending in the forum;" "The extent of conflict with the sovereignty of the defendant's state;" "The forum state's interest in adjudicating the dispute;" "The

most efficient judicial resolution of the controversy;" "The importance of the forum to plaintiff's interest in convenient and effective relief;" and "The existence of an alternative forum." Schwarzer, § 3:141 (citing *Core–Vent Corp. v. Nobel Inds.,* 11 F.3d 1482, 1486–87 (9th Cir. 1993)).