**ROSMUND M. CAESAR, MERLE RICHARDS, AND PETER'S FARM CONDOMINIUM OWNER'S ASSOCIATION, INC., Appellants**
**v.**
**FIRSTBANK PUERTO RICO, Appellee**

D.C. Civ. App. No. 2004/0068

District Court of the Virgin Islands

Division of St. Croix

June 3, 2008

LEE J. ROHN, ESQ., St. Croix, U.S.V.I., *Attorney for Appellant, Caesar.*

RHONDA HOSPEDALES, ESQ., St. Croix, U.S.V.I., *Attorney for Appellant, Peter's Farm Condo. Owner's Association, Inc.*

BRUCE BENNETT, ESQ., St. Croix, U.S.V.I., *Attorney for Appellee, FirstBank Puerto Rico.*

GÓMEZ, *Chief Judge, District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands; and* KENDALL, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

(June 9, 2008)

## I. ISSUES PRESENTED

This Court is asked to determine two issues. First, whether the Superior Court erred in denying Caesar's Motion to Set Aside Default Judgment. Second, whether Caesar's failure to file a timely response to the complaint constituted excusable neglect.

## II. FACTS AND PROCEDURAL POSTURE

This action arises out of an action for debt and mortgage foreclosure. On October 26, 1990, Rosmund Caesar and Merle Richards ("Appellants")[1] executed a promissary note secured by a first priority mortgage. Therein, they agreed to repay First Virgin Islands Federal Savings Bank the principal sum of $48,000.00, together with interest at the rate of twelve and a quarter percent per annum.

Eventually, the Appellants fell behind on their monthly payments and on June 10, 2002, FirstBank of Puerto Rico ("FirstBank" or "Bank")[2] initiated an action for debt and mortgage foreclosure against them.[3] (App.

---

[1] Richards and Caesar both executed the mortgage and note, however, the responsive pleadings below are filed only in Caesar's name and mention of Richards is conspicuously scarce. Richards' absentia extends to this appeal. Caesar filed her initial notice of appeal on May 3, 2004, that notice was amended on July 2, 2004, to add Richards as a party. However, the appellate brief advocates primarily for Caesar.

[2] On September 21, 2000, First Virgin Islands Federal Savings Bank merged with FirstBank Puerto Rico. As a result, FirstBank Puerto Rico acquired all of First Virgin Islands Federal and Savings Bank's right, title and interest in the note and mortgage.

[3] Peter's Farm Condominium Association ("Association") is named as a co-defendant. On December 21, 2000, Peter's Farm Condominium Association ("Association") recorded a condominium lien in the amount of $7,834.94 against the mortgaged property. On May 30, 2001, the Association filed a complaint against Caesar and Richards for $7,465.92 in past due

pp. 13-17.) On June 22, and July 22, 2002, respectively, Caesar and Richards were personally served with the summons and complaint.

When they failed to file an answer to the complaint, the Clerk of the Superior Court entered default against them.[4] (App. pp. 24-26.) Thereafter, the Bank filed a single motion seeking both default and summary judgment.[5] (App. pp. 27-37.) On May 7, 2003, the Superior Court ordered summary judgment, default judgment and foreclosure against Appellants and summary judgment against the Association.[6]

In November of 2003, the property was sold to the Bank for a high credit bid of $66,241.06. (App. pp. 57-58.) On January 16, 2004, Caesar moved to set aside the default judgment and sale. Caesar argued that although she failed to formally answer the complaint, she made an appearance by implication when after she received the complaint, her sister who is an attorney, attempted to contact the Bank. (App. pp. 114-142.) Caesar also contended below that she did not receive notice of the Bank's Motions for Default and Default Judgment, and having appeared by implication, the Federal Rules of Civil Procedure entitled her to such. (J.A. pp. 114-115.) The Superior Court promptly denied Caesar's Motion to Set Aside Default Judgment. This timely appeal followed.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has appellate jurisdiction over the Superior Court's final judgment pursuant to Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a[7]; V.I. CODE ANN. tit. 4 § 33.[8] An appeal of an entry of default

---

condominium fees. (Supp. App. pp. 1-3.) The Bank's claim against the Association is limited to its contention that the Association's lien is subordinate to the Bank's lien.

[4]    The Association filed an answer on July 1, 2002, wherein, it averred that it had insufficient knowledge of any of the facts alleged in the Bank's complaint. (App. pp. 18- 21.)

[5]    The Association filed an answer, but otherwise has not filed responsive pleadings, nor has it challenged the Bank's assertion that its condominium lien is subordinate to the Bank's first priority mortgage.

[6]    (App. pp. 59-65.)

[7]    The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

[8]    Appellant filed her notice of appeal on May 3, 2004, prior to the passage of Acts Nos. 6687 and 6730 (Virgin Islands legislation pertaining to the establishment of the Supreme Court of the Virgin Islands).

judgment, is reviewed for the trial court's abuse of discretion. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).

## IV. DISCUSSION

### A. Appearance by Implication

Appellants argue that the Superior Court erred in denying Caesar's Motion to Set Aside Default Judgment. Specifically, that Caesar entered an appearance[9] by implication and was entitled to notice of FirstBank's Motion for Default Judgment,[10] pursuant to FED. R. CIV. P. Rule 55(b)(2).[11]

Traditionally, an appearance requires some filing with or actual physical appearance before the court. However, an appearance by implication for the purposes of Rule 55 can arise as a result of an objective manifestation of intent on the part of the defendant or counsel to defend the action. *Trust Co. Bank v. Tingen-Millford Drapery Co.*, 119 F.R.D. 21, 22 (D.N.C. 1987); *H. F. Livermore v. Aktiengesellschaft Gebruder Loepfe*, 139 U.S. App. D.C. 256, 432 F.2d 689 (D.C. Cir. 1970).

Hence, while a party may formally appear in an action by filing a notice of appearance with the court, a party may also make an appearance by implication, by indicating to the moving party a clear purpose to defend the suit. *FROF Inc. v. Harris*, 695 F. Supp. 827, 830 (E.D. Pa. 1988).

Caesar argued below, as she does on appeal, that she appeared by implication when attorney Royette Russell, Caesar's sister, attempted to communicate with the Bank. According to Caesar, upon receiving the complaint in June 2002, she forwarded it to Russell, so that Russell could assist her in resolving the conflict. Caesar contends that Russell contacted

---

[9]  [1] An appearance is a formal proceeding by which the appellant submits himself to the jurisdiction of the court. *James v. Williams*, 26 V.I. 20, 22 (Terr. Ct. 1990).

[10]  Where Caesar failed to answer, the Bank did not serve Caesar, nor Richards with its Motion for Entry of Default and Summary Judgment.

[11]  Rule 55(b)(2) provides in pertinent part that:

"[i]f the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application."

FED. R. CIV. P. 55(b)(2).

the Bank's mortgaging department several times to attempt an arrangement under which Caesar could resume her belated mortgage payments. (App. pp. 308-309; App. Brief p. 6.) However, Russell's calls were not returned, and no negotiations occurred as a result of her attempts. (*Id.*) Nonetheless, Caesar posits that Russell's attempts to communicate with the Bank was an appearance by implication because it demonstrated Caesar's clear intention to defend the suit.

However, appearance by implication has predominantly been applied to cases involving communication between litigants or their attorneys regarding service of process, filing responsive pleadings or settlement negotiations. In *FROF Inc. v. Harris*,[12] the court found that there was an appearance by implication where defendant's counsel sent a letter to plaintiff's counsel concerning questionable service of the summons and complaint. *Id.*[13] Similarly, in *Hutton v. Fisher*,[14] the Third Circuit Court of Appeals found that a telephone call from defendant's counsel to plaintiff's senior counsel agreeing to an extension of time was sufficient to meet the appearance standard of Rule 55(b)(2). *Id.*; *see also Natasha C. v. Visionquest, Ltd.*, 2003 U.S. Dist. LEXIS 14631 (E.D. Pa. 2003) (holding that correspondence and telephone conversations between the parties' respective counsel was appearance by implication).

■ Appearance by implication is particularly applicable in circumstances where a defendant fails to formally respond to responsive pleadings because she is under a good-faith belief that her attorney is actively defending the law suit. For example, *Trust Co. Bank*,[15] involved a contract dispute where the attorney for the defendant contacted the bank's attorney to request an extension of time to file an answer to the complaint. *Id.* at 21, 23. After denying the informal request, the bank received an entry of default judgment against the defendant. *Id.* In deciding to set aside the default judgment, the court in *Trust Co. Bank* noted that "courts are likely to vacate a default when it is the attorney, and not the party, who is responsible to properly defend the action." *Id.* at 22.

■ In this case, neither litigants, nor their attorneys sufficiently engaged the Bank or its representatives regarding service of process,

---

[12]  695 F. Supp. at 830.
[13]  (Emphasis added).
[14]  359 F.2d 913, 915 (3d Cir. 1966).
[15]  119 F.R.D. at 22-23 (E.D.N.C. 1987).

responsive pleadings or settlement negotiations. According to Caesar, after she received the complaint she immediately gave it to her sister, Royette Russell. Russell subsequently had a conversation with "someone" at the Bank who did not return her telephone call.[16] This one-time informal contact with an unidentified person who was an alleged Bank representative, does not, even under a broad interpretation, rise to the level of a settlement negotiation sufficient to indicate a "clear purpose" to defend the suit. *See Walker & Zanger Ltd. v. Stone Design S.A.*, 4 F. Supp. 2d 931, 935 (C.D. Cal. 1997); *see also FROF Inc.*, 695 F. Supp. at 830.[17]

Moreover, Russell was not an attorney for either Appellant. At the time of Russell's attempted communication with the Bank, she was the Law Clerk to the Magistrate of the District Court. As such, Appellants concede that Russell was "not allowed to engage in the private practice of law. . ." (App. Brief p. 12, n. 1) Hence, although Caesar characterizes Russell as her "personal representative",[18] Russell could not have appeared as counsel on Caesar's behalf or otherwise engaged in the active defense of this litigation.

Finally, the Appellants assert that although Russell contacted the Bank's Mortgage Department several times; Russell's calls were not returned.[19] Thus, even under a liberal interpretation, we cannot construe Russell's failed attempts to communicate with the Bank[20] to set up a payment arrangement as an appearance by implication.[21] Consequently, where neither Appellant appeared, neither Appellant was entitled to notice of FirstBank's Motion for Default Judgment. *See* FED. R. CIV. P. 55(b)(2). Accordingly, the Superior Court did not abuse its discretion in denying Caesar's Motion to Set Aside Default Judgment.

---

[16] (App. Brief p. 12.)

[17] Additionally, Russell did not engage the Bank or its attorney, who was clearly identified in the complaint, regarding service of process or responsive pleadings.

[18] (App. Brief p. 12.)

[19] Caesar claims that Russell spoke to "someone" in FirstBank's Mortgage Department who advised Russell that she would get back to her; however, no one ever contacted Russell. (App. Brief pp. 12-13).

[20] (App. pp. 141-142; 232-233; 308-309; 393-394; App. Brief pp. 13, 25.)

[21] Additionally, neither Appellant claims that they personally exchanged communication, indicting a clear intention to defend the suit, with the Bank or its attorneys after being personally served with the summons and compliant.

## B. Relief from Judgment under Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides that, the court may relieve a party from a final judgment, order or proceeding for "mistake, inadvertence, surprise or excusable neglect." *See* FED. R. CIV. P. 60(b)(1). Caesar argues, in the alternative, that the trial court erred in denying her Motion to Set Aside Default Judgment, because, her conduct in failing to formally respond to the complaint constituted excusable neglect.

▮▮ The decision to set aside or relieve a party from judgment is left to the sound discretion of the trial court.[22] *Emcasco Ins. Co.*, 834 F.2d at 73; *Zawadski de Bueno*, 822 F.2d. at 419-420; *Gumbs v. Francis*, 17 V.I. 116 (Terr. Ct. 1990). Exercise of such discretion is grounded on "1) whether vacating the judgment will visit prejudice on the plaintiff[s], 2) whether defendant has a prima facie meritorious defense, and 3) whether the default was a result of the defendant's culpable or inexcusable conduct." *Skinner v. Guess*, 27 V.I. 193, 196 (D.V.I. 1992); *see Bonhomme v. Terry Frederick Associates*, 25 V.I. 385 (D.V.I. 1990).

▮ It is well established that, for an appellate court to properly exercise its function of reviewing for abuse of discretion, the trial court must make explicit findings concerning the aforementioned factors in rendering judgment by default or dismissal, or in declining to reopen such judgment. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987); *see Farnese*, 687 F.2d at 761, 765-66 (3d Cir. 1982); *In re MacMeekin*, 722 F.2d 32, 34-36 (3d Cir. 1983); *Madesky v. Campbell*, 705 F.2d 703, 705 (3d Cir. 1983); *Donnelly v. James-Manville Sales Corp.*, 677 F.2d 339, 341 n.2 (3d Cir. 1982); *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 81 (3d Cir. 1982); *Harris v. Cuyler*, 664 F.2d 388, 390 (3d Cir. 1981).

In this matter, the trial court failed to consider whether the Bank would be prejudiced, or whether the Appellants had a meritorious defense. At most, the trial court concluded that the Appellants were culpable for

---

[22]  The appeal of a denial of a Rule 60(b) motion brings up for review only whether the trial court abused its discretion in so denying the motion itself; it does not bring up for review the merits of the underlying order or judgment. *See, e.g., Browder v. Director, Dept. of Corrections of Ill.*, 434 U.S. 257, 263 n.7, 98 S. Ct. 556, 54 L. Ed. 2d 52 (1978) (holding that an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review).

failing to participate in this litigation because they were served with the complaint and failed to file responsive pleadings. (App. p. 267.) However, without the trial court's explicit determinations, regarding prejudice to the Bank and the prima facie merits of Appellants' defense, we cannot properly review the court's entry of default judgment for abuse of discretion.

## V. CONCLUSION

■ For the reasons cited above, we shall remand this matter with instructions for the Superior Court to make explicit findings on the record 1) whether the plaintiff will be prejudiced if default is lifted, 2) whether the Appellants have a meritorious defense, and 3) whether the default was the result of Appellants' culpable conduct.[23] An order consistent with this opinion shall follow.

---

[23] In determining whether default judgment is proper, the trial court should keep in mind, the Third Circuit Court of Appeals' standard of disfavoring default judgments as a general matter. *See Zawadski de Bueno*, 822 F.2d at 420.